LYDIA W. HARMON *vs.* OLD COLONY RAILROAD COMPANY.

Suffolk.    March 4, 1897. — May 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Personal Injuries — Market Value of Services — Evidence — Exceptions —
Instructions — Damages.*

Where, in an action for personal injuries, the only ground relied on in support of
the exceptions was that it was not competent for the plaintiff to show what his
services would be worth in the market to other persons, the court said that,
while upon reading the bill of exceptions, it was hardly to be supposed that this
question was presented or ruled on at the trial, yet, if it was, the evidence was
competent.

In an action for personal injuries, the instructions of the judge as to the rule of
damages not being stated in the bill of exceptions, and no exception being taken
to them, the court said that, if the plaintiff's services had a market value in the
kind of business in which he was engaged, such market value might be proved

to the jury as a fact which they might take into consideration in determining
the amount of damages to be awarded to him, although he had not actually
worked for others, but was engaged in business on his own account.

TORT, for personal injuries occasioned to the plaintiff, on February 29, 1892, while upon a train on the defendant's railroad. Trial in the Superior Court, before *Fessenden,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified, on direct examination, that before the accident she had had experience in keeping restaurants and boarding houses in Boston, having had the whole charge of three houses connected as one ; that she began thirty years before, and had been in the business up to within seven or eight years before the accident; that she was engaged at the time of the accident in keeping a restaurant at 52 North Market Street, in Boston; and that there was a market value for such services as hers, and that she knew what it was.

On cross examination, she said she had never herself received wages for her services, and had never hired anybody to take care of a restaurant and lodging house as she did, and paid them by the week or month for it ; and in answer to the questions, " Had you ever been hired out to anybody to do this sort of work like this business you had ?   Did you get wages by the week or the month or the day, or any other way ? " she replied, " I had been engaged to go."

This was all the evidence on her qualification to testify.

She was then asked, in direct examination, " What was the fair market value of your services at the time of this accident ? "

The judge admitted the question, subject to the defendant's exception.   The witness answered, " Twenty-five dollars a week to other people."

Mary J. Stimson, called by the plaintiff, testified that she had kept a boarding and lodging house in Boston for twenty years, and had known the plaintiff for twenty-eight or thirty years, although for the last few years she had seen very little of her ; that she considered the plaintiff a very capable woman ; that she had had the reputation of being the finest cook in Lewiston, Maine ; that she was very capable in managing a boarding house, and the help and boarders ; and that she knew the market value of services of such a woman as she knew the plaintiff to be.

She was then asked, "What was the fair market value of the services of a woman of Mrs. Harmon's age and capacity at the time of this injury, in 1892?"

The defendant's counsel having objected to the substance of the question, the judge gave him an opportunity to cross-examine the witness upon her qualification to testify, but the counsel stated that he preferred to cross-examine later. The judge permitted the question to be put, and the defendant excepted.

The witness answered, "I should say $25 or $30 a week."

On general cross-examination, in answer to the question, "What do you understand by market value?" the witness said: "I don't know as I understand your question hardly, — market value: the way I take the question here, services in the house, or what she is worth in a business way. . . . I consider my services something, and yet I don't think they are anything compared to hers, — what hers used to be in running a house or a saloon."

"*Q.* What is the market value of a house? *A.* What you can make out of it. If you are not capable of running it, you can't make anything out of it.

"*Q.* No; I mean a piece of real estate independent of anybody to run it. *A.* I don't think I understand your question at all. I have answered it the best I could, but the market value of anything is what you make of it, is n't it, and what you can get out of it?

"*Q.* Is that your idea? *A.* It is; I think if you take a house and you are not capable of running it, and don't make anything out of it, it is not worth anything; and if you take it and make a success, it is what I should call the market value.

"*Q.* Then your idea of market value is the result? *A.* Is the capability that you have of running a place and taking care of it.

"*Q.* That is your idea of market value? *A.* That is the nearest I can come to it.

"*Q.* That is what you mean by your testimony when you talk about the market value of Mrs. Harmon's services, is n't it? *A.* It is; that is what I mean."

At the end of the cross-examination, counsel for the defendant asked that this witness's testimony be stricken out.

The plaintiff's counsel then asked the witness :

" Mrs. Stimson, will you disassociate any idea of Mrs. Harmon and her services from your mind, and answer this question to me: What, if I inquire of you the market value of something, whether it is the bag you have in your hand, or the gloves that you have on your hands, or potatoes in the market, or meat, or what not, what do you understand by those words ' market value '? does that convey something to your mind ?   *A.* Why, all it conveys to my mind, the market value of anything is what it will fetch."

The witness was further asked :

" Mrs. Stimson, when you are testifying as to the value of Mrs. Harmon's services, whether or not you have in mind the sum which they will fetch in the market, — whether or not you have that in your mind when you testify to their value ? "

The defendant objected.

"*Q.* Or what her services would command in the labor market? *A.* Why, the question was asked me what they would command, and I said —

"*Q.* No, no.   Do you have that element in your mind of what they will bring ?   *A.* Why, yes, I do; what they would bring; what my own would or Mrs. Harmon's."

The judge allowed the evidence to stand, and the defendant excepted.

Eugene Fellner, called by the plaintiff, having testified that he was twenty-eight years old, was engaged in the restaurant business in Boston, · and had had for several years the whole charge of the three Fellner restaurants in Boston, employing all the help, and managing the entire business, and that he knew the market value of the services of a person who was capable of managing a restaurant, was then asked the following question :

" Assuming that a woman is fifty-one years of age, that she has been engaged practically in keeping a restaurant and a boarding house for twenty-five years, with perhaps some slight intervals, — but for the most part of the time for twenty-five years, — and that she has kept such restaurants and boarding houses here in Boston, on Columbus Avenue and at 52 South Market Street ; and assuming further that she is a woman who has the physical and mental capacity to manage and control a restaurant where there are from two hundred to four hundred

patrons that take their meals in a day, and three boarding houses where there are from eighty to one hundred people; assuming that she is a first-class cook, that she understands pastry cooking and meat cooking, and that furthermore she has the capacity to take charge of help, both in the hiring and the managing of the help necessary to a restaurant or a boarding house; assuming further that she is a person of tact and pleasant disposition, so that she has the good will of a large number of patrons; — I wish you to state to the jury what the services of such a person, what the fair market value of the services of such a person as I have described would be?"

There was evidence from which the jury would be authorized in finding that the particulars stated in this question were true.

To the substance of this question, the defendant objected.

The judge allowed it to be put, and the defendant excepted.

The witness answered, " I should say that they would be worth about $60 a week."

The jury found for the plaintiff; and the defendant alleged exceptions.

*C. F. Choate, Jr.*, for the defendant.

*A. A. Strout & G. E. Smith*, for the plaintiff.

ALLEN, J.    The only ground relied on in support of the exceptions is that it was not competent for the plaintiff to show what her services would have been worth in the market to other persons. Upon reading the bill of exceptions we should hardly suppose that this question was presented or ruled on at the trial; but, if it was, we are of opinion that the evidence was competent. The instructions of the court as to the rule of damages are not stated, and no exception was taken to them. But if the plaintiff's services had a market value, in the kind of business in which she was engaged, such market value might be proved to the jury as a fact which they might take into consideration in determining the amount of damages to be awarded to her, although she had not actually worked for others, but was engaged in business on her own account. See *Matteson* v. *New York Central Railroad*, 35 N. Y. 487, 493.

*Exceptions overruled.*