TIMOTHY O'BRIEN *vs.* JEROME B. LOOK & another.

Suffolk.    January 17, 1898. — May 17, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Superintendence — Negligence — Evidence — Wages — Damages — Expert.*

At the trial of an action under the employers' liability act, evidence that a foreman of the defendant employed and discharged men, that he had seventeen or eighteen men working under him and subject to his orders as to the time of beginning and quitting work and as to the manner of its performance, and that he received higher wages than the others because he was the boss or foreman, is sufficient to show that his principal duty in the service of the defendant was that of superintendence.

The fact that a foreman is paid higher wages than the ordinary laborers is a circumstance to be considered in connection with other evidence upon the question whether his sole or principal duty is that of superintendence.

At the trial of an action for personal injuries occasioned by the falling of a fore and after, so called, through the hatch of a vessel into the hold below, and striking the plaintiff, evidence that the plaintiff had been ordered by the defendant's superintendent to spread a tarpaulin over a part of the cargo in the hold to protect it from falling rain; that other laborers with a winch undertook to ship the fore and after over the combings of the hatch; that in so doing they attached to it the fall of the winch, whereupon the superintendent told the man in charge of the winch to go ahead; that, as the winchman started it, the whelps on the barrel of the winch slipped because it was wet; that the superintendent then took the bite of the fall on the winch head, took three turns, and lifted the fore and after over the combings; and that when some one called out to lower, he unwound the rope from the drumhead with his own hands in such a way that he could not control the fore and after, and it fell on the plaintiff, is sufficient to show negligence of the superintendent in the performance of his duty as superintendent.

In an action for personal injuries received by the plaintiff while in the employ of the defendant, the wages that the plaintiff was receiving as an employee at the time of the accident may be shown as bearing on the question of damages.

At the trial of an action for personal injuries occasioned by the fall into the hold of a vessel of a fore and after, which the servants of the defendant were attempting

to place over the combings of the hatch, an expert may answer a hypotheti-
cal question as to whether the method adopted of lowering the fore and after
was proper.

TORT, under the employers' liability act, St. 1887, c. 270, for
injuries sustained by the plaintiff while in the employ of the
defendants. Trial in the Superior Court, before *Dewey*, J., who
allowed a bill of exceptions, in substance as follows.

The plaintiff testified that at the time of the accident in June,
1894, he was working for the defendants in the hold of the ves-
sel British Queen, having been employed by one Lowrey, the
foreman, to assist in unloading the vessel; that Lowrey had the
care of the hatch where the plaintiff was working and the hiring
of the help who worked at the hatch; that he ordered the men
to go to work wherever he wanted them to, and his directions
were obeyed; that he employed and discharged the men, and
that the plaintiff never saw anybody else giving directions.; that
at the time of the accident he was, in obedience to the order of
Lowrey, in the hold of the vessel directly under the opening of
the forward hatch, about thirty or thirty-five feet from the sur-
face of the deck, spreading a tarpaulin over some flour to keep
off the rain, and while so doing he was struck by something.
He also testified what wages he was receiving when he was
injured.

One Lynch testified for the plaintiff that he was employed by
Lowrey to run the winch on the ship; that Lowrey gave orders
to the men, who would not begin work without them; that just
before the accident it was raining, and he heard some one on
deck say, "Come up and put on the hatches"; that the fore
and after, which is of iron, weighing five or six hundred pounds,
and is used to lower the hatches on when they are closed, was
being lowered by the winch; that the whelps or staves on the
barrel of the winch did not work well; that they went around
the barrel and independent of it with the weight of the fall;
that the hatchman came behind the witness, who was assisting
in lowering the fore and after, and took up the slack as he re-
versed the winch, while the foreman, standing in front of him,
took the bight and wound it around the winch end and held on
to it; and that when the witness turned his head he saw the fore
and after going through the combing of the hatch.

On cross-examination he testified that the hatchman who set the winch in motion and usually gave him his orders about lifting the winch, and was giving orders until he left the hatch and went behind the witness, did not give orders to lower the fore and after into the hold; that the hatchman turned on the steam just before the accident and the whelps moved around; that the hatchman then took hold of the slack and was pulling it as he was reversing the winch and unwinding it off the whelps, while Lowrey wound the fall around the drumhead all the time he was getting ready to heave the fore and after; that they then started to lower the fore and after, Lowrey having hold of it, and that it struck the combing of the hatch and did not get into the socket; and that some one, the witness could not say who, called out, " Look out below."

One McCarthy testified for the plaintiff that he worked for the defendants and was employed by Lowrey, who, just before the accident, gave orders to throw a tarpaulin into the hold, and ordered some of the men to spread it over the flour; that the witness, without orders, put the fall around the fore and after, which had to go on before the hatches could be put on ; that the winch could not hoist it over the combings because the whelps inside it were loose, so they hauled off the fall of the drum sufficiently to take it around the drumhead; that he saw Lowrey putting the fall around the winch head several times; that the witness went ahead on it then and lifted the fore and after over the combings, holding it at the end nearest the winch with another man at the other end, when Lowrey lowered the slack of the fall off the drumhead, and down it went into the hold; and that the witness could not hold it because it was too heavy.

Other witnesses called by the plaintiff testified in substantially the same manner as to the duties and conduct of Lowrey, and as to the manner of the accident.

An expert in the manufacture and use of cranes, derricks, and winches was permitted, subject to the exception of the defendant, to testify for the plaintiff that it was not a proper method in the rain to wind the fall around the drumhead, and with a man holding the fall to attempt to lower the fore and after, since when the winch head was wet it became slippery, causing the whelps to slip; and that if the end of the rope had been se-

cured to the drum the whelps would not have slipped, and there would have been no occasion to put the fall on the drumhead.

One Quinn testified for the defendants that at the time of the accident he was a general superintendent of the defendants, who employed eighty or ninety men; that seventeen or eighteen of them worked under the orders of Lowrey, the foreman, who, in the absence of the witness, was superintendent over his men with full power; and that his chief duty was to see that the men did their work properly, help to rig, give directions, and employ and discharge men. On cross-examination he testified, subject to the exception of the defendants, that Lowrey was paid higher wages than the other men because he was boss or foreman.

Lowrey testified for the defendants that he had been employed by them for ten years, doing every kind of work on the wharf and in the hold, tending the winch, and directing the men; that just before the accident he sent the men down into the hold to spread the tarpaulin; that some of the men put on the fore and after, and when he told the winch man to go ahead the whelps on the barrel of the winch slipped; that he then took the bight of the fall on the winch head, took three turns, and lifted the fore and after over the combings; that somebody then called out to lower quick; and that he then lowered the fore and after and threw the turns off the winch head, and as he threw the turns off he had the last turn in his hand holding the bight, and away went the fore and after, because it was not properly entered in the sockets.

This was all the material evidence in the case, at the close of which the defendants requested the judge to rule: "1. That upon all the evidence the plaintiff could not recover. 2. There is no evidence to go to the jury of any defect in the ways, works, and machinery. 3. There is no evidence to be submitted to the jury that Lowrey's sole or principal duty was that of superintendent. 4. There is no evidence to be submitted to the jury that the accident was caused by an act of superintendence."

The judge declined so to rule, but gave full instructions to the jury on the subject mentioned in the requests, to which no exceptions were taken except so far as they were inconsistent with the requests.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

The case was argued at the bar in January, 1898, and afterwards was submitted on briefs to all the justices.

*J. Lowell,* for the defendants.

*J. E. Cotter, (J. W. McAnarney* with him,) for the plaintiff.

KNOWLTON, J. The bill of exceptions recites that, at the close of the evidence, the defendants' counsel presented four requests for rulings, of which the second is as follows: "There is no evidence to go to the jury of any defect ·in the ways, works, and machinery." The defendants' brief contains the same recital in the same words, and then says, "The second request the court gave, and refused to give the other three, to which the defendants duly excepted, and pray that their exceptions may be allowed." The defendants' argument is confined to the exceptions to the refusal to give the other three rulings requested. In the bill of exceptions it is said that the judge refused to give the rulings requested, but that he gave full instructions on the subjects mentioned in the requests, to which no exceptions were taken, except so far as they were inconsistent with the requests. We are in doubt as to what instruction was given in regard to the subject of the second request, but we think we are justified in acting upon the admission of the excepting party, and in assuming that the inaccuracy is in the bill of exceptions rather than in the defendants' brief, which admits that there was no exception on this part of the case, and makes no argument or request in regard to it.

The questions argued by the defendants are whether there was evidence to charge them on the ground of negligence of their superintendent in the performance of his duty as superintendent, and whether there was error in the admission of evidence against their objection.

1. There was ample evidence, which need not be stated, to show that Lowrey was a person whose principal duty in the service of the defendants was that of superintendence.

2. The difficult question in the case is whether there was evidence that his negligence in the performance of his duty as superintendent caused the accident, or contributed to it. The evidence is undisputed that the work at the time and place of the accident was being done under his immediate personal direction and superintendence. There is no doubt that the plaintiff

was in the exercise of due care. Is there any evidence of negligence on the part of Lowrey? If there is, do we find any evidence that his negligence was in the capacity of superintendent?

It may be that the men whose duty it was to put the fore and after into its socket when it was lowered were negligent. Whether they were or not does not distinctly appear. However that may be, we think there was evidence of negligence in lowering the fore and after in the manner described, so that if it failed to enter its socket it would fall on the men below. Not only was Lowrey responsible for the method adopted to do the work, and for the directions given to the other men there, but he with his own hands unwound the rope from the drumhead to lower the fore and after in such a way that he could not control the iron as it was being lowered, and so it fell upon the plaintiff. We have no hesitation in saying that there was evidence of negligence on the part of Lowrey. The defendants contend that his negligence, if any, consisted in unwinding the rope from the drumhead, which was work ordinarily done by a mere employee, and not that of a superintendent. If his only connection with the accident were in this act of manual labor, we should be inclined to adopt the defendants' view. But he had determined upon the method of putting the fore and after in place, and had given directions which made his act of unwinding the rope in its wet condition dangerous to the men below. See *McCauley* v. *Norcross*, 155 Mass. 584. We are of opinion that the part of the work which he did with his hands must be considered in connection with his relations to the work as superintendent, and that we cannot separate it from the other conditions for which he was responsible by supervising and giving orders. A majority of the court are of opinion that there was evidence for the jury on this branch of the case.

The wages that the plaintiff was receiving as an employee at the time of the accident might properly be shown as bearing upon the question of damages. *Murdock* v. *New York & Boston Despatch Express Co.* 167 Mass. 549. *Harmon* v. *Old Colony Railroad*, 168 Mass. 377.

The fact that Lowrey was paid higher wages than an ordinary laborer was a circumstance to be considered in connection with the other circumstances upon the question whether his sole or

principal duty was that of superintendence. In many cases it would have little or no significance; but while alone it would prove nothing, it was proper for the consideration of the jury in the form in which it was stated, and in connection with other evidence bearing upon the question.

The expert was rightly allowed to answer the hypothetical question whether a certain method of lowering the fore and after, which the evidence tended to show was adopted in this case, was a proper method. *Exceptions overruled.*