DAVID FLYNN *vs.* BOSTON ELECTRIC LIGHT COMPANY.

Suffolk.    March 2, 1898. — June 21, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Superintendence — Fellow Servant — Expert — Testimony.*

The plaintiff, a lineman in the defendant's employ, while engaged in stringing an overhead electric light wire which ran through and was obstructed by the branches of a tree, was ordered by one G., who was the foreman of the gang at work upon the wire, and who was accustomed to assist the men under him by performing various acts of manual labor when occasion required it, to cut off a

limb of the tree; and after the limb had been cut, G. gave orders to the other men upon the ground to pull the wire back through the tree, and himself took hold of the wire with some of the others and pulled it, and the wire caught upon the limb of the tree upon which the plaintiff was standing, and which seemed to the plaintiff to be sound, and before the plaintiff had time to get into a safe position the limb broke and he fell and was injured. *Held*, that G.'s act in pulling on the wire was not an act of superintendency within the meaning of the employers' liability act, St. 1887, c. 270, and that the defendant was not liable.

The work of stringing wires from one pole to another through branches of an intervening tree is one within the range of ordinary knowledge, experience, and observation; and it is not a matter as to which expert testimony will be admitted.

TORT, under the employers' liability act, St. 1887, c. 270, for personal injuries occasioned to the plaintiff while in the defendant's employ.

At the trial in the Superior Court, before *Hardy*, J., it appeared that the plaintiff, a lineman in the employ of the defendant, was engaged with five other men, all in the defendant's employ, stringing an overhead electric light wire which ran through the branches of a tree; that one Grant, who was the foreman of the gang, and who was accustomed to assist the men under him by performing various acts of manual labor when the occasion required it, ordered the plaintiff to cut off a limb of the tree which obstructed the wire; when cut, this limb lodged upon a lower limb, and the plaintiff, standing on the lower limb, made a second cut in the one which had fallen from above, and it fell to the ground; and the lower limb seemed to the plaintiff to be sound. After the upper limb fell to the ground the plaintiff remained standing on the lower limb with one leg around the trunk of the tree; and Grant then ordered the wire to be pulled back through the tree, and together with some of the other men began to pull upon it; when the wire was pulled it caught upon the limb, and the plaintiff called out to stop pulling, but before he had time to get into a safe position the limb broke and the plaintiff fell to the ground and was injured. For the purpose of showing that the method of doing the work under the direction of Grant was unsafe and unusual, and as bearing upon the plaintiff's due care, the plaintiff's counsel asked of an electrical expert whether in his opinion the method of dealing with the wire was a proper one; and he also asked of the same expert what was the usual method of running a wire

from one pole to another when there was a tree between the poles. Both questions were excluded, and the plaintiff duly excepted.

At the close of the evidence the plaintiff requested the following ruling: "If the jury find that Grant gave negligent orders, when acting as superintendent, to the plaintiff or the other workmen, just preceding the injury of the plaintiff, orders not consistent with due care, — and that the giving of these orders caused the men handling the wire, which was then in contact with a part of the tree upon which the plaintiff was standing, to so handle and operate that wire that the plaintiff's position was rendered unsafe and dangerous, and the plaintiff was injured by reason of said orders of Grant being executed, — the jury would be authorized in finding that the negligence of Grant contributed to produce the injury of the plaintiff, even though after he, Grant, gave the orders, he went to work with his own hands to help pull the wire."

The judge refused so to rule, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in March, 1898, and afterwards was submitted on briefs to all the justices.

*J. E. Cotter & A. P. French,* for the plaintiff.

*A. Hemenway,* (*G. C. Dickson* with him,) for the defendant.

BARKER, J. Assuming that Grant's principal duty was that of superintendence, he was also a workman laboring with his own hands, and the defendant is not made answerable to the plaintiff for Grant's negligence except in the exercise of his superintendence. We are of the opinion that the evidence would not justify a finding that any negligence in his exercise of superintendence contributed to the plaintiff's injury.

A wire had been passed through the branches of a tree into which the plaintiff was sent to cut off a limb. When cut, this lodged upon another lower down, and then the plaintiff, standing upon the lower limb, made a second cut in the one which had fallen from above, and it fell to the ground. Assuming that it was his duty to remain longer in the tree, there is nothing to justify a finding that the order then given to pull the wire back was negligent.

The wire was not then caught, and the plaintiff was himself

then in a position to see what would probably be the effect of pulling the wire back. This order is the only act of Grant which could be found to be an act of superintendence connected with the accident. His helping the other workmen to pull was merely the act of a workman, and had in it no element of superintendence. When the wire was pulled, it caught upon the limb, the limb shook, and the plaintiff then called out to stop pulling, but before he had time to get into a safe position the limb broke. It is plain that the plaintiff was in a position to know and to judge of his own safety, and if the pulling back of the wire, which was naturally the next thing in order after the limb which he had been sent into the tree to cut off had finally fallen, would put him in peril, he himself should give warning. Grant could not be found negligent in not perceiving the danger which the plaintiff himself did not perceive, and of which he did not give warning. When the danger became apparent, it was too late to avert the accident.

We also think that the refusal of the court to admit the opinion of an electrical expert as to whether the method of dealing with the wire was a proper one, and what the usual method is of running a wire from one pole to another when there is a tree between the poles, was correct. That the wire was intended for the transmission of electricity was immaterial.

The work of stringing wires from one pole to another through branches of an intervening tree is one within the range of ordinary intelligence and observation, involving only matters of ordinary knowledge and experience, such as men in general understand and comprehend without expert assistance, and as to which technical experience would not be instructive. See *Higgins* v. *Dewey*, 107 Mass. 494.

*Exceptions overruled.*