MARIETTA McPHEE, administratrix, *vs.* NEW ENGLAND
STRUCTURAL COMPANY.

Suffolk.    January 26, 27, 1905. — May 18, 1905.

Present: KNOWLTON, C. J., MORTON, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

If a person in charge of a gang of men employed in raising trusses to support a
bridge over a canal leading to the second story of a mill building, who also takes
part in the work and runs the engine used in hoisting, after sending a workman
upon a truss to clear it from the wall of a brick building against which it is
jammed in being raised, negligently starts the engine before the truss is clear of
the building, and a rope breaks causing the death of one of the workmen, his
act in deciding to start the engine may be found to be an act of superintendence
although he also does the manual work of setting it in motion.

TORT under the employers' liability act by the administratrix
of the estate of John Francis McPhee, who left no widow, the
plaintiff being a sister of the intestate and with one Anna J.
McPhee his next of kin dependent upon his wages for support at
the time of his death, for the conscious suffering and death of
the intestate caused in the manner described in the opinion.
Writ dated December 27, 1901.

At the trial in the Superior Court before *Richardson*, J. the
jury returned verdicts for the plaintiff, one in the sum of $200
for conscious suffering of the plaintiff's intestate and the other
in the sum of $2,300 for causing the death of the intestate.    The
defendant alleged exceptions, raising the questions stated by the
court.

*W. I. Badger & W. H. Hitchcock*, for the defendant.

*J. E. Macy*, for the plaintiff.

LORING, J.    This action was left to the jury on the second
count of the declaration.    That was a count under the employers'
liability act, for negligence of a superintendent.    The jury found
for the plaintiff, and the case is here on a refusal to direct a ver-
dict for the defendant and to rule that the act of one Cairns in
starting the engine (the cause of the accident) was not an act
of superintendence.

The defendant was engaged in raising and placing in position a bridge across a canal, one end of which was to enter the second story of a mill building. The work was in charge of a man named Cairns. Cairns not only acted as superintendent, but in addition took part in the work and ran the engine used in hoisting. Beside and under Cairns were four men, and among them the plaintiff's intestate Frank McPhee.

The bridge consisted of six skeleton trusses some ninety feet in length and weighing about five thousand pounds each. Five of them had been placed in position before the accident here complained of happened. That accident happened while the sixth truss was being hoisted to be put in position. The truss in question was being hoisted by means of two gin poles and an engine. Each gin pole was from forty to fifty feet in length, and was held in position by stays from the top of the poles to the ground. These gin poles were about sixty feet apart, and equidistant from the ends of the truss. Attached to each gin pole was a fall, consisting of a double block attached to the top of the poles and a single block attached to one end of the truss, and the end of each fall was connected with a drum of an engine. This engine was behind a fence parallel with the building. There was a gateway in this fence. When the truss in question was lying on the ground, before the hoisting of it was begun, one end lay in the gateway and the other end projected into a large doorway of the mill building through which freight cars ran. This fence prevented the person who was running the engine from seeing the truss until it was raised above the fence.

The falls had been attached to the truss and it had been raised so that the outer end was high enough and the building end not quite so high, before the accident complained of happened. The building end of the truss had first stuck in the doorway, and after it was drawn clear of that it jammed against the wall of the building above the doorway. The hoisting was then stopped, and an effort was made to pull it away from the building by a runner which ran to the " nigger head " of the engine, in substance a third drum. This was not successful, and McPhee mounted that end of the truss, apparently with a crowbar, to clear the end of the truss from the building. Cairns testified that McPhee shouted that the end was clear, and to start

the engine ; that he did so, but the drum would not move. Thereupon he went out and called to McPhee that the end must be still foul of the building, to which McPhee answered that it was not, and to go ahead ; whereupon he went back, put on an extra strain, the engine made a few revolutions, and the rope broke, causing the injuries here complained of from which McPhee died.

If the jury believed the story told by Cairns, the defendant was entitled to a verdict as matter of law.

But the jury were not bound to believe that story.   One of the gang, Hatcher by name, (who was tending a tackle running from the middle of the truss to a footbridge near by to keep the truss from buckling,) testified that he did not hear any signals to stop or to go ahead just previous to the truss falling.   Another of the gang, Hanlon by name, (who at the time of the accident was tending another line attached to the middle of the truss, to keep it from buckling, which line had been tended by McPhee before he mounted the building end of the truss,) testified to the same effect.   The third man, Kehoe, who was stationed to prevent the outer end of the truss from fouling the bent on which it was to rest, testified to the same effect.   The jury were warranted in finding that Cairns did not start the engine on a statement from McPhee that the truss was clear of the building, and that he was negligent in starting the engine when he did.

It also is plain that the jury could find that McPhee was in the exercise of due care.

This brings us to what is really the only question in the case, namely, whether the act of Cairns in starting the engine was an act of superintendence.

The negligence, if there was negligence in starting the engine, consisted in causing the engine to be started at all under the circumstances then existing, namely, when the truss was jammed against the wall, and when something had to give way if the engine was set in motion then.

This is not a case where it was proper to start the engine, and there was negligence in the way in which the starting of the engine was carried into effect.

In the former case, the decision that the engine shall be started is an act of superintendence, and it is none the less so

because the manual work of setting the engine in motion is done by the superintendent.    The cases of *O'Brien* v. *Look*, 171 Mass. 36, *Roche* v. *Lowell Bleachery*, 181 Mass. 480, *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586, are cases belonging to this class.

In the latter case the act of negligence is in the way the engine is set in motion it being proper to set it in motion at the time. That is not an act of superintendence, but is an act of a fellow servant, and for that the master is not liable at common law or under the employers' liability act.    The cases of *Cashman* v. *Chase*, 156 Mass. 342, *Riou* v. *Rockport Granite Co.* 171 Mass. 162, *Flynn* v. *Boston Electric Light Co.* 171 Mass. 395, *Joseph* v. *Whitney Co.* 177 Mass. 176, *Hoffman* v. *Holt*, 186 Mass. 572, are cases belonging to this class.    It was held in *Whittaker* v. *Bent*, 167 Mass. 588, that when the superintendent in that case said "go ahead," those words were said in the course of his work as a fellow servant, not as a direction given by him as a superintendent, and for that reason that case comes within this class. *Brittain* v. *West End Street Railway*, 168 Mass. 10, was held to come within this class.

*Exceptions overruled.*