SUSAN E. MOORE, administratrix, *vs.* ARTHUR D. CURRAN & another.

Suffolk. January 7, 8, 1908. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

In an action by the administratrix of the estate of a longshoreman under the employers' liability act for causing the death of the plaintiff's intestate from being precipitated into the hold of a vessel by the breaking of a staging on which he was working in unloading coal from the vessel, caused by a heavy tub of coal falling suddenly on the staging when it was being hoisted for unloading by a fall and tackle worked by an engine operated by an engineer of the defendant, it appeared that the superintendent in charge of the work was not present at the time of the accident and that in his absence the engineer was in charge of the work. There was no evidence of incompetence of the engineer nor that the machinery was not suitable nor of a failure to maintain the machinery and appliances in proper repair and condition, and if any negligence was shown it was that of the engineer in the manner in which he hoisted the tub of coal that fell on the staging. *Held*, that the plaintiff could not recover as, although the engineer had been left in charge of the work, the manual labor of running the engine was not an act of superintendence and in doing it he was a fellow servant of the plaintiff's intestate.

TORT by the administratrix of the estate of Nathaniel H. Moore under the employers' liability act, to recover damages for causing the death of the plaintiff's intestate after conscious suffering. Writ dated December 2, 1901.

In the Superior Court the case was tried before *Fessenden, J.*

The plaintiff's intestate was a longshoreman and on February 21, 1901, was engaged with several other men in unloading coal from a large vessel which was lying at Sargent's wharf in Boston. He was stationed at the time of the happening of the accident upon an outrigger which was attached to a drop stage that was from forty to sixty feet above the deck of the vessel as she lay at the wharf. The drop stage extended out from the side of a building and was held in position by chains reaching from the end of the stage up to the side of the building. The outrigger was an extension of the drop stage extending three or four feet beyond the outer edge of the stage and was held in place by wedges which were driven into staples at each side of the outrigger to keep it from slipping. The coal was brought up from the hold of the vessel in tubs by a fall and tackle, and the customary way of doing the work was for the tub to rise a little above the outrigger, when the coal would be dumped into a barrel which then would be wheeled back over the drop stage into the building where its contents would be dumped by the wheeler into the bin. Each barrel was large enough to receive two tubs of coal and each tub of coal weighed about nine hundred pounds. The duty of the plaintiff's intestate was to receive the tubs of coal as they came up to the stage upon which he was at work and help the wheeler who was at work with him to dump the tub of coal into the barrel. He was an experienced man and had been accustomed to do this kind of work for a number of years. The tubs of coal were raised from the hold of the vessel, by means of the fall and tackle mentioned, by power furnished by an engine which was stationed upon the wharf near the vessel and was operated by one White, the engineer. The accident happened about ten or fifteen minutes after seven o'clock in the morning in broad daylight. One Mandeville was superintendent of the job, but was not present at the time of the happening of the accident. He testified that in his absence the engineer was in charge of the job. On the morning of the accident, the outrigger was in use extending out three or four feet beyond the end of the drop stage and the plaintiff's intestate was standing on the outrigger when the accident happened. One tub of coal had been brought up from the hold of the vessel and had been dumped into the barrel but had not yet

been run in. The second tub had been brought up from the hold of the vessel when it caught and was held above the outrigger and then with its contents of coal suddenly fell upon the staging, breaking it, and causing the plaintiff's intestate to fall into the hold of the vessel.

White testified, "I tried to lower my friction and my brake, — my brake was stuck, and I found myself unable to move up and all at once why the brake went and was unable to hold the coal down and it came down and broke this off." On being asked to repeat this answer he said, "I tried every way to lower that brake, tried to lower the brake with my foot and the friction with my hand, and all at once, why, the brake let go and I was unable to control it and the coal came down and struck this outrigger that the men were standing on and broke it off."

At the close of the evidence the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*G. H. Mellen,* for the plaintiff.

*W. H. Hitchcock,* for the defendants.

HAMMOND, J. There was evidence that the tub, having been hoisted perhaps a little higher than usual, stuck, and that while the engineer was attempting to lower it, it suddenly fell upon the staging with such force as to break it down ; and the plaintiff's intestate, who was standing upon the staging, was precipitated into the hold of the vessel, thereby receiving injuries which resulted in his death.

There was no evidence of the incompetency of the engineer, nor of a failure to maintain machinery and appliances in proper repair. The machine always had worked well, and immediately after the accident continued to work well. There is no contention by the plaintiff that it was not suitable for the purpose if in proper repair. If there was any negligence it was that of the engineer in the manner in which he handled the "friction" and the brake. It is urged that, the regular superintendent being absent at the time of the accident, White was acting superintendent, and hence the defendants were responsible for his negligence. But the manual labor of running the engine was not an act of superintendence. As to that he was a fellow servant. Nor does the evidence warrant the conclusion that

the decision to start the engine in a proper way was a negligent act.   See *McPhee* v. *New England Structural Co.* 188 Mass. 141, and cases cited, for illustrations of the difference between acts which are of superintendence and those which are not, so far as material to the liability of an employer.

There being no evidence of negligence of the defendants, the order directing a verdict for them was right.

*Exceptions overruled.*