HENRY BEDARD *vs.* NONOTUCK SILK COMPANY.

Hampshire.     September 19, 1911. — December 28, 1911.

Present: RUGG, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

If a superintendent in a silk factory takes off the guard covering the rollers of a filling machine for the purpose of cutting off laps of silk which are clogging the rollers, and, after he has removed the silk, fails to replace the guard and, starting the machine, says to the workman who was operating the machine " All right; now go ahead," whereupon the workman, in proceeding to return to the machine, slips and gets his hand caught in the rollers, in an action by the workman against the proprietor of the factory for his injuries thus caused, there is no evidence of negligence of the defendant's superintendent in an act of superintendence, because the only act of superintendence was the decision to clear the machine at that time, which was not negligent, and the failure to replace the guard and starting the machine without it were merely defects in the manner of performing manual labor as a fellow workman of the plaintiff, the accompanying words " All right; now go ahead " being regarded as a part of such manual labor and not as words of command.

TORT for personal injuries sustained by the plaintiff on March 17, 1910, while in the employ of the defendant in its silk factory in that part of the town of Northampton called Leeds, from the plaintiff's hand being caught between the rollers of a filling machine by reason of the negligence of one Tower, alleged to be a person in the employ of the defendant whose sole or principal duty was that of superintendence, in having removed a cover or guard from the rollers and having failed to replace it, and in having informed the plaintiff that the machine was " all right " and having told him " to go ahead."     Writ dated August 20, 1910.

In the Superior Court the case was tried before *Sanderson,* J. It was agreed by the defendant that Tower was in its employ and that he exercised superintendence.   The plaintiff in his testimony described the accident in part as follows:

" I was running two machines.   I had been running these machines a little over two weeks.   When I started to run the machines, Mr. Tower showed me how to run them; he showed me how to put the laps on, showed me how to start it, and showed me how it stopped.   The laps are the silk which is put

on and fed in from the back end of the machines, and taken out at the front end of the machine. That is what goes through the machine. When we started the machine, we pulled down the cover on the front of the machine which threw the belt on the tight pulley. The machine stopped automatically. There was a little catch on the end, it ran so long and would stop; it would run about two or three minutes I should think, when the cover would fly up and the machine would stop and the operator then took little sticks and removed the silk from the combs which are cylinders with wire teeth on, along on the front under the cover. I removed the silk by winding it on sticks; when I had done that, I pulled down the cover and started it again. I was tending two of those machines. Mr. Tower told me, if there were any laps on the rolls at the back end of the machine to tell him, and that he would cut them off; he didn't want me to cut them off; he would cut them off himself. The rolls are where the silk feeds in at the back end. If there were laps gathered on the rolls at the back end, it wouldn't make nice silk, it wouldn't fill out even and if it got lapped too much, it wouldn't run. There was a cover or guard over the rolls on the back end of the machine; the laps he told me not to take off are right under that; I never cut any laps off the rollers and I never removed the guard. Tower never said anything to me about the guard.

"The accident happened on the seventeenth of March, 1910, at about 7.30 A. M.; I started up my machine at 6.50 A. M. and I started in to work. I was working a while, I was working on one and took the silk off, and I started up the other and they ran together for a little while and one got blocked, what they called 'lapped.' The two machines were about two or three feet apart, I should think. I was working on the machine on the left hand side; I got hurt on the one on the right hand side; there was a large filling engine on the other side of the machine on the left towards the passageway to the boiler room. I took the silk off my machine nearest the passageway to the boiler room and then went to the other and put some silk on. . . . I took the silk off that, and that time it blocked up, as I told you, lapped and there was . . . one fellow came over, another fellow working side of me came over and looked at it, and Mr. Tower

came over and said . . . He said he would fix it himself and told us to go ahead, on the other machine, . . . We started to work on the other machine. He [Tower] went to work on the other one, and when he got through, he started it up and got it agoing. . . . Then he walked by the back end, and when he was going by, he said, ' All right; now go ahead.' . . . He told me to go ahead, it was all right. Then I started that machine and took the silk off, and went to the other, and I got over there and my foot slipped, and my hand went in."

One Cherevette, called by the plaintiff as a witness, testified that he was working in the same room with the plaintiff on the day of the accident; that he was working about ten feet away; that he did not see the accident but that immediately after the accident he saw the cover or guard of the machine upon which the plaintiff was injured; that the guard, when he saw it, was in the box on the front of the machine; that he saw the guard about two or three minutes after the plaintiff got caught.

At the close of the plaintiff's evidence on the question of liability, the judge at the defendant's request ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*W. J. Reilley*, for the plaintiff.

*F. F. Bennett*, for the defendant.

HAMMOND, J. Even if it be assumed in favor of the plaintiff that the questions whether he was careful, whether the temporary absence of the guard was the proximate cause of the injury and whether there had been a sufficient compliance with the statutory requirements as to the time, place and cause of the injury were for the jury, there was still a fatal defect in his case. There was no evidence of any neglect for which the defendant is answerable.

No case was made out on the ground that at the time of the accident the machine was defective. The only trouble at the time of the accident was that the guard was not in place. It appeared that one Tower had taken off the guard for the purpose of cutting off the laps of silk which were clogging the rollers, and after he had removed the silk had failed to replace the guard. Tower was a superintendent, but we are of opinion that these were not acts of superintendence. In deciding to clear the machine at that time there was no negligence. It was

the proper thing to be done. The negligence, if any there was, consisted not in the decision of Tower as superintendent that the work should be done, but in the manner in which the manual labor was done by him as a fellow servant of the plaintiff in carrying out that decision. And so of the failure to replace the cover and of the act of starting the machine. The case stands in this respect with *Flynn* v. *Boston Electric Light Co.* 171 Mass. 395, and similar cases. See also for discussion of the principle involved, *McPhee* v. *New England Structural Co.* 188 Mass. 141, and cases cited on p. 144.

Nor can the words " It is all right, go ahead " be regarded as words of command under the circumstances. They were a part of Tower's work as a fellow workman. As stated by Holmes, J., in a similar case, they are " merely the assurance, in a customary colloquial form, of the fellow workman . . . [who had done the work] . . . that all was safe." *Whittaker* v. *Bent,* 167 Mass. 588, 590. See also *McDonnell* v. *New York, New Haven, & Hartford Railroad,* 192 Mass. 538. In no act of superintendence is Tower shown to have been negligent.

*Exceptions overruled.*