JOHN O. NEALAND *vs.* LYNN AND BOSTON RAILROAD COMPANY.

Essex.   January 11, 1899. — March 2, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Negligence — Assumption of Risk — Action.*

A workman, who, standing on a ladder, the top of which rests against the front of one of several boilers and the bottom upon the brick floor of the room, while engaged in cleaning the face of the boiler, is injured by falling from the ladder to the floor, cannot maintain an action for the injury, either at common law or under the employers' liability act, St. 1887, c. 270, on the ground that the floor was uneven and ridgy, causing the ladder to slip, if the floor is then in the same condition as it was when he entered the defendant's service, but he assumes the risk of working upon it as it was; and if, while working there, the defendant's engineer in charge of the boilers led him to believe that a new floor would be put in, that would not affect the defendant's liability.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant. The declaration contained counts at common law and under the employers' liability act, St. 1887, c. 270. Trial in the Superior Court, before *Hardy*, J., who ruled that the plaintiff was not entitled to recover under either count of the declaration, and directed the jury to return a

verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*H. I. Bartlett*, for the plaintiff.

*H. F. Hurlburt,* for the defendant.

KNOWLTON, J.  The plaintiff was at work in the defendant's boiler-room, at the sides of which, near one end, were two rows of upright boilers, four in each row.  There was a space of between fourteen and eighteen feet wide between the two rows. The floor of the room was of brick.  It was a part of the plaintiff's duty to assist in shovelling coal under the boilers, and to keep the fronts of the boilers clean.  The boilers were about fourteen feet high.  The plaintiff testified that he took a ladder about fourteen feet long and set it on the brick floor about two and a half or three feet from the front of one of the boilers, with its top leaning against the boiler, and went up to clean the front of the boiler.  The upper round of the ladder was broken, and he stood on the round next to it, which was the twelfth from the bottom, so that the sides of the ladder extended up about two feet above the round where his feet rested.  In doing his work he had to reach out to the right and the left, and as he was reaching out with his left arm wiping off the face of the boiler, the ladder slipped, as he said, and he fell to the floor and was injured.

The only ground of recovery alleged against the defendant is that the floor was defective.  The plaintiff testified that it was uneven and ridgy, and looked like a " corn field or a potato field where the hills had been dug out and left in a very bad condition." He admitted, however, that the ladder did not fall, and that he could not tell whether it slipped six inches, and his other witnesses testified that they did not see it slip, and, so far as they observed, it was in the same position after the accident as before.  The plaintiff testified that, although the brick floor was sloping and uneven and ridgy, he " put the ladder up in a safe condition."  In cross-examination he said the floor was not sloping where he placed the ladder, that it seemed to be level enough to set his ladder on, that it appeared to be level where he put both sides of the ladder, that he took notice how he put the ladder up, and that it was level so far as he could see.  Two other witnesses were called by the plaintiff, one of whom testi-

fied that the floor was pretty level in front of the boiler where the accident happened, and that there were no depressions near where the ladder was put, that it was substantially level, and that the place where the depression was was not near the boiler, but in the centre of the space between the two rows of boilers, and was caused by taking out a blow-pipe. The dirt had been taken out, and the bricks replaced in the centre of the space in doing this work. The other witnesses testified that the floor in front of the boiler, where the accident happened, was in good condition.

The plaintiff's evidence tends strongly to show that the accident was not caused by a defect in the floor. It seems almost certain from the plaintiff's own account that his fall was due to some other cause. However that may be, it is clear upon the evidence that the defendant owed the plaintiff no duty to take up and reconstruct the floor at the place of the accident. It was a construction of a permanent character, whose condition was obvious when the plaintiff made his contract to enter the defendant's service. It was admitted that it was then in the same condition as at the time of the accident. If it was not perfect at the place where the ladder was put, it was not dangerous or defective in any such sense that reconstruction of it by the defendant would be expected as a duty growing out of the contract to employ the plaintiff. The plaintiff engaged to work in that boiler-room with its brick floor, which, upon all the evidence, was expected by both parties to be used until the defendant chose to replace it. If there was any risk in working upon it, the plaintiff assumed it as an open and obvious risk of the business when he entered the defendant's service. There was no evidence of negligence on the part of the defendant. *Murch* v. *Wilson*, 168 Mass. 408, and cases there cited.

If, while the plaintiff was working there, the defendant's engineer in charge of the boilers led him to believe that a new floor would be put in, as the plaintiff contends, this does not affect the defendant's liability. So far as appears, the engineer was not authorized to speak for the defendant, and if he had been, his offers under the circumstances testified to would have been without consideration or binding force.

*Exceptions overruled.*