JOHN McDONNELL vs. NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    March 8, 1906. — September 5, 1906.

Present : KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

Whether an engineer in the boiler room of a car shop of a railroad company, who has the direction and control of his assistants and the firemen but has no power to hire or discharge them, and who starts and stops the engines, sees to the cleaning of them, the filling of the oil cups and the packing of the engines, and does other manual labor as required, can be found to be a person whose sole or principal duty is that of superintendence, *quaere.*

It is not evidence of a defect in a ladder about fifteen feet long used in the boiler room of a car shop with a concrete floor that it had V shaped points of iron at

the bottom and that it slipped when used by the plaintiff and had done so once before.

It is not the duty of a railroad company to furnish a stationary ladder or one with hooks upon it in the boiler room of a car shop with a concrete floor maintained by the company.

An employer is not bound to furnish his workmen with the best possible appliances but only to exercise care in seeing that those which he furnishes are safe and proper for the use for which they are intended.

If a superintendent in the boiler room of a car shop with a concrete floor places a long ladder against a boiler and orders a fireman under his control to go up the ladder and shut off the steam, the slight act of assistance in placing the ladder is not an act of superintendence and does not relieve the fireman from looking to see that the ladder is placed safely before attempting to ascend it.

If a superintendent in the boiler room of a car shop with a concrete floor places a long ladder against a boiler and says to a fireman under his control " Go up the ladder and shut off that steam up there, that valve," and tapping him on the shoulder says " Go ahead Mac," this does not excuse the fireman for failing to attend to his own safety in going up the ladder before looking to see that it is placed firmly.

TORT for personal injuries received by the plaintiff on January 6, 1903, while in the employ of the defendant in the boiler room of its car shop in that part of Hyde Park called Readville, with a count at common law alleging that the defendant furnished the plaintiff with an unsafe and defective ladder with which to work, and counts under R. L. c. 106, § 71, cl. 1, 2, alleging respectively a defect in the ways, works or machinery of the defendant and negligence of a person in the service of the defendant entrusted with and exercising superintendence and whose sole or principal duty was that of superintendence. Writ dated March 16, 1903.

In the Superior Court the case was tried before *Holmes,* J. The plaintiff testified that he went to work for the defendant as a fireman about December 12, 1902, and worked in the boiler shop at the fire doors firing until January 6, 1903; that he was employed by one Pearson who was called the general foreman; that one Dutton was the chief engineer of the plant; that Dutton had charge of all the boilers and engines that were there; that the plaintiff did not see him do anything in particular except looking over the plant, that is, the steam plant, boilers and engines, steam pipes; that Dutton gave the plaintiff orders and directions and also gave orders to the firemen that were working with him; that there were three firemen on the day shift and four on the night; that the plaintiff always obeyed Dutton's

orders; that he never saw any other men refuse anything Dutton asked them to do; that he heard him give orders to the other men, tell them what to do; that the orders he gave to the other men were obeyed; and that he never saw Dutton discharge any one. The duties performed by Dutton are stated in the opinion.

The plaintiff's account of the happening of the accident was as follows:

"On the 6th of January I was working at the fire doors in the boiler house about three o'clock in the afternoon and Dutton came over and he says — 'Go up the ladder and shut off that steam up there, that valve.' He also tapped me on the shoulder and he said — 'Go ahead Mac,' and I went and I got up. Mr. Dutton was standing right beside me at the front of the boiler. I went around to the ladder about eight or ten feet from where we were standing. I don't know how long the ladder had been there exactly. It might have been there a day or so. I am not sure just what time the ladder was put there. I saw it put there by Mr. Dutton. It was up against the side of the boilers and I went over to the ladder when I got the order and went up the same as I would any ladder. I went up — when I was just about getting off the ladder it went right from under me like that. When I made the move to the ladder he was facing toward the front of the boiler, just stood there in front of the boiler, you know, about eight or ten feet from the ladder. In the act of getting off the ladder the ladder slipped from under me and I came down. The ladder was long, I should say fourteen or fifteen feet long and probably more. I never measured the ladder and was never up on it before and never had any occasion to use it and when I made the move to get off the ladder, the ladder went right from under me and I did not know anything, I went so quick, until I was on my back on the floor. I never saw any one going up on the ladder before myself, I never saw any one use the ladder before myself, but I know the ladder was used, I know the ladder had been there for that purpose I suppose. I didn't think of making any examination of the ladder because I started to go up the ladder, as I thought as the ladder was put there it was all right. I didn't think there was anything at all the matter with the ladder. I went up the ladder

just the same as I would now if I was going to do anything. I didn't think of making any examination at all of the ladder. I saw when I put my hand on the ladder it was standing there on the concrete floor and I went up, I didn't think there was anything more to it."

Later the plaintiff testified "Dutton placed the ladder the minute before I went on the ladder," and also testified "Dutton came over from the ladder after placing the ladder that day, for me to go up on it, he came over to me and he told me to go up on the ladder then, and that is the time he gave me the order."

There was evidence that previously there had been a step ladder in the boiler room; and that about two days before the accident Dutton had taken the step ladder away and had brought the ladder in question into the boiler room; that this ladder was without any hooks or stays to hold it in place and had V shaped points of iron at the bottom or foot.

One Haudel testified that about two days before the accident he told Dutton that he would not go up on that ladder again: that when he was ready to go down on the ladder it slid away from him; and that Dutton only laughed at this.

One Karklin testified that he was in the defendant's employ when the foregoing conversation occurred, and heard Haudel tell Dutton that "the ladder wasn't safe, there was' danger there," and "that he would not go up the ladder any more."

Dutton was called by the defendant and testified, on cross-examination, that he got this ladder in one of the defendant's shops; that he took it into the boiler room a few days before the accident and placed it against the brick wall for the use of the firemen; that this was the only ladder in the boiler room at the time of the accident which could be used by a person to go up and turn off the steam and that when he ordered any one to go up and shut off the steam "he would go on that ladder."

At the close of the evidence the judge ruled that on the evidence the plaintiff could not maintain his action on any count in his declaration, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*C. Reno & J. P. Fagan,* for the plaintiff.

*J. L. Hall,* for the defendant.

MORTON, J. We assume in favor of the plaintiff that the

ladder was a part of the ways, works and machinery of the boiler room, and also, though with much more doubt, that Dutton was a person whose sole or principal duty was that of superintendence. He had charge of the engines and as engineer had the direction and control of his assistants and of the firemen, of whom the plaintiff was one. He started and stopped the engines, saw to the cleaning of them and the filling of the oil cups and the packing of the engines and did other manual labor as required. He had no power to hire or discharge his assistants or the firemen, and it would seem that his position was that of a superior servant performing manual labor as required in the proper discharge of his duties, and exercising such direction and control over his assistants and the firemen as was necessary to secure efficient service on their part, rather than that of one whose sole or principal duty was that of superintendence. But, however that may be, we think that there was no evidence of a defect in the ladder or of negligence on the part of Dutton. The only thing in respect to which it is contended that the ladder was defective is the V shaped irons on the bottom. There is nothing to show that this was not a usual and proper mode of construction adopted to prevent the ladder from breaking and wearing, or that the ladder as thus made was unsafe in the hands of a person exercising ordinary care. The fact that the ladder slipped, and had done so once before, was as consistent, to say the least, with a want of due care on the part of the plaintiff and the other person using it, as with a defect in the construction. The V shaped irons would seem to have rendered the ladder more secure instead of less so, if the person using it exercised proper care. It cannot be said as matter of law that the defendant was bound to furnish a stationary ladder or one with hooks upon it, and that it could be found guilty of negligence for not doing so. It was not bound to furnish the best possible appliances but only to exercise reasonable care in seeing that those which it furnished were safe and proper for the use for which they were intended. We see no evidence of negligence on its part in the performance of this duty. See *Nealand* v. *Lynn & Boston Railroad*, 173 Mass. 42; *Regan* v. *Donovan*, 159 Mass. 1; *Wood* v. *Tileston & Hollingsworth Co.* 182 Mass. 449.

As to Dutton, all that he did was to place the ladder against the boiler and tell the plaintiff to go up and shut off the steam. The position in which the ladder stood was perfectly obvious to the plaintiff and he was at liberty to change it if he saw fit to. Dutton's act in placing the ladder against the boiler cannot fairly be regarded as anything more than a slight act of assistance to the plaintiff in doing that which Dutton had directed him to do. It cannot properly be regarded as an act of superintendence, or as relieving the plaintiff from himself looking to the placing of the ladder before he attempted to ascend it. Nor can the direction " Go up the ladder and shut off that steam up there, that valve" and tapping him on the shoulder and saying " Go ahead Mac " be regarded as excusing the plaintiff from such attention to his own safety. *Gouin* v. *Wampanoag Mills*, 172 Mass. 222. *Ruchinsky* v. *French*, 168 Mass. 68.

*Exceptions overruled.*