HOUSTON BELT & TERMINAL RY. CO. v. SCHEPPELMAN. (No. 335.)

(Court of Civil Appeals of Texas. Beaumont. April 1, 1918. Rehearing Denied April 17, 1918.)

1. MUNICIPAL CORPORATIONS  &#9755;809(1) — STREETS — DEFECTS — PERMITS FOR EXCAVATIONS.

Where a railway terminal company was granted a permit by a city to construct a sewer, the company owed to the public a duty to see that the refilling was tamped in a safe and proper manner, in compliance with an ordinance to leave the street or sidewalk in as good order or condition as before excavation.

2. MASTER AND SERVANT &#9755;315—INJURY TO THIRD PERSONS — INDEPENDENT CONTRACTORS.

That a sewer is constructed by an independent contractor does not relieve the principal of responsibility for defects in a street causing injury to pedestrians in refilling excavations, where such principal contractor retained authority to decide as to the manner of refilling.

3. MUNICIPAL CORPORATIONS &#9755;809(1)—DEFECTS IN STREETS—SEWER CONSTRUCTION—LIABILITY OF PERSON CAUSING DEFECT.

A railway terminal company, which has constructed a sewer under a city street, was not relieved from liability for personal injuries sustained by a subsidence of the refilling, because the city had taken over the sewer system after completion, the condition in the sidewalk not being brought about by any defect in the sewer itself, but by the negligent failure of the railway company to restore the surface after laying the sewer pipe.

4. MUNICIPAL CORPORATIONS &#9755;819(1)—DEFECT IN SIDEWALK—SEWER CONSTRUCTION—EVIDENCE.

In an action by a pedestrian for personal injuries due to a sidewalk made defective by sewer construction, evidence *held* to show that the construction company did not leave the street and sidewalk in good condition.

5. MUNICIPAL CORPORATIONS &#9755;819(1)—SEWER CONSTRUCTION — PERSONAL INJURIES — EVIDENCE.

In an action for personal injuries to a pedestrian due to a sidewalk made defective by defendant's construction of a sewer, evidence that the sidewalk was perfectly level before the construction of the sewer, and that a part of the sidewalk buckled up and another part sank after the sewer was constructed, causing the sidewalk to slope down, justified a finding that the dangerous condition of the sidewalk did not exist prior to the construction of the sewer.

6. HUSBAND AND WIFE &#9755;114 — SEPARATE PROPERTY—STATUTE — RETROACTIVE EFFECT.

Acts 34th Leg. c. 54, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621a), providing that all property or moneys received as compensation for personal injuries sustained by a wife shall be her separate property, does not affect actions filed prior to the passage thereof.

7. DAMAGES &#9755;221—SPECIAL ISSUES.

In an action for personal injuries due to a sidewalk made defective by sewer construction, a special issue, "What sum of money, if paid now, will, in your judgment, fairly and reasonably compensate plaintiff for the injuries, if any," sustained by reason of her fall, as shown by the pleadings and evidence in the case, was not erroneous.

8. EVIDENCE &#9755;380—PHOTOGRAPHS—AUTHENTICATION.

In an action for injuries due to a fall caused by a defective sidewalk, the testimony of the injured party that a photograph offered in evidence was a correct picture of the scene of the accident was sufficient to render it admissible.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by F. Scheppelman against the Houston Belt & Terminal Railway Company. From a judgment for plaintiff and a denial of new trial, defendant appealed to the Court of Appeals for the First Supreme Judicial District. On transfer to the Ninth Supreme Judicial District. Affirmed.

---

&#9755;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Andrews, Streetman, Burns & Logue and W. L. Cook, all of Houston, for appellant. Carothers & Brown and Geo. L. Charlton, all of Houston, for appellee.

BROOKE, J. Appellee sued the Houston Belt & Terminal Railway Company, claiming damages on account of personal injuries to his wife, Mrs. Kate Scheppelman, the injuries having been caused by a fall. It is alleged that the Houston Belt & Terminal Railway Company is liable to plaintiff for said injuries thus sustained, because at the point where plaintiff's wife fell the sidewalk was in a defective condition, due to the defendant's negligence.

The negligence alleged was, in substance, that the defendant constructed, or caused to be constructed, a sewer at the corner of Preston avenue and La Branch street, in the city of Houston, and negligently and carelessly failed to properly fill up, pack, and ram down tight the earth taken from under said sidewalk, and from adjacent thereto, and so negligently and carelessly refilled the excavations that the earth under said sidewalk and adjacent thereto gradually sank until it caused the said sidewalk to sink in one place and buckle up in another, and caused one portion of said walk to be raised several inches higher than the adjoining portion of said walk, and caused same to project several inches above the surface, so as to make it very dangerous for pedestrians crossing the said street and using said walk, and especially to persons using said sidewalk to cross from the northeast side of Preston avenue to the southwest side of Preston avenue, the said projection having a tendency to trip pedestrians and throw them on the said concrete pavement. It was alleged that the work of construction was done either by the defendant directly or through the Hedges Construction Company, a contractor. In addition to the averment of negligence, as aforesaid, the violation of the city ordinance was also specified with reference to the matter of refilling the excavation and packing the earth. Damages in the amount of $20,000 were claimed in the petition.

The defendant answered with a general demurrer and general denial, and averments that it should not be held liable on account of any of the matters and things set out in plaintiff's petition, since the work of construction was done by the Hedges Construction Company, a corporation, under a contract of date August 25, 1908, the terms of which constituted said Hedges Construction Company an independent contractor, and as such said Hedges Construction Company completed the work of construction, and controlled all of the details thereof. Defendant further alleged that there should be no recovery against it, since prior to the accident in question, which was alleged to have occurred on November 20, 1912, the city of Houston had

taken over the said sewer constructed by Hedges Construction Company under the contract mentioned, and the defendant had surrendered any and all control, and any and all connection with, and any and all rights in, said sewer to the city of Houston; which arrangement was consummated in the year 1909, more than three years prior to the accident in question. Defendant further alleged contributory negligence on the part of Mrs. Scheppelman.

The cause was tried on November 14, 1916, and submitted to the jury by special issues. Upon the jury's verdict, in response to the issues propounded, the court entered judgment against the defendant and in favor of the plaintiff, F. Scheppelman, in the sum of $7,500, with interest and costs of court.

On December 5, 1916, the amended motion for new trial was overruled, the defendant excepted to the action of the court in overruling same, and filed its supersedeas bond. The case was appealed to the Court of Civil Appeals for the First Supreme Judicial District of Texas at Galveston, and has been transferred to this court, and is now before us for consideration.

By the first assignment of error it is claimed that the court erred to the prejudice of defendant in failing and refusing, upon defendant's request, to instruct the jury peremptorily in behalf of the defendant, it appearing that plaintiff is not entitled to recover, because the evidence is wholly insufficient to raise the issue of any duty owing by the defendant to the plaintiff or plaintiff's wife with reference to any of the matters and things set out in plaintiff's petition. Under this assignment are submitted many propositions and counter propositions. Among others, it is urged by appellee that, when the appellant made an excavation in a public street and under and adjacent to a public sidewalk, it owed to the plaintiff and his wife, and to the public generally, the duty to use proper precautions to see that the excavation was properly refilled and tamped, so that there would be no such subsidence of the surface as would create an obstruction or pitfall dangerous to pedestrians.

It seems that this sewer was constructed along Preston avenue, from St. Emanuel street to the Austin street sewer, between the sidewalk and the curb, and that the sewer ditch was an open excavation; that is, an open ditch was excavated, the pipe was put at the bottom of the excavation, and then the excavation was refilled. At the place where Mrs. Scheppelman fell the ditch was originally 10 or 12 feet deep. At the time this excavation was made there was an ordinance of the city of Houston in force requiring any person or corporation who dug, or caused to be dug, any ditch, or made any opening in, over, or across any street or sidewalk, for the purpose of laying down gas or other pipes, to fill up, pack, and ram down tight the earth

taken therefrom, and leave such street or sidewalk in as good order or condition as the same was before such excavation was made. The appellant secured from the city council permission to dig the ditch and lay the sewer pipe, and it is urged that it owed to the plaintiff and his wife, and to the public at large, the duty to comply with the ordinance which was enacted to safeguard the public. The permit to put in this sewer was given by the city council to the Houston Belt & Terminal Railway Company. The evidence showed that water tamping was the usual and customary way of tamping the refilling of excavations in public streets, and was the safest and most approved method of tamping, and it is undisputed that the ditch was not water tamped. The testimony showed that the plans and specifications for every foot of the sewer that was laid was filed with the Hedges Construction Company, and the specifications instructed the Hedges Construction Company as to how the work should be done. The contract between the Houston Belt & Terminal Railway Company and the Hedges Construction Company contained the following provision:

"If necessary to water tamp the refilling of the above sewer, this is to be done at the expense of the company, the contractor to be allowed cost of work plus ten per cent."

There was no testimony showing that there was any other method of tamping as efficient as water tamping, and no testimony going to show that any other system of tamping would leave the street or sidewalk in as good condition as it was before the excavation was made.

The jury found that the Houston Belt & Terminal Railway Company retained control and supervision of the work. From the record it appears that the appellant's engineer was on the ground while the refilling of this excavation was being done, and that such refilling was done under the direction of defendant and its engineer, and the jury found that as the work progressed the appellant and its engineer dictated as to how the refilling was to be done. The jury also found that the sewer was not constructed by the Hedges Construction Company for the appellant under an independent contract between them, whereby the Hedges Construction Company undertook and had direct charge of and performed all the details of the construction work, and that the Houston Belt & Terminal Railway Company, during the performance thereof, did not have only such charge and supervision of the work by its engineer as to insure the completion of same according to the plans and specifications thereof, and the record shows that these findings are not attacked in this court, and we may say that they are sustained by the evidence. The plans and specifications were not introduced in evidence or accounted for in any way. Appellant's engineer testified that he prepared these plans and specifications, and this record shows that the Hedges Construction Company was to furnish merely the material and labor necessary to construct the sewer, for which they were to be paid so much per lineal foot for the sewer pipe, and so much per cubic yard for the excavation, but that the work was to be done according to the specifications of the Houston Belt & Terminal Railway Company, and that they were to be made as required by the railway company's chief engineer. As above stated, the tamping was clearly to be left to the railway company, and it was provided that, if the railway company decided that water tamping was necessary, the construction company should be allowed the cost of the work, plus 10 per cent. additional.

Under the plans and specifications, the jury were justified in finding that the railway company was to maintain control and supervision of the work and direct how it should be done. This record shows that the dirt was not tamped down at all in the excavation, but, as in the language of one of the witnesses, "We piled the dirt on an average of a foot above the level where there was any traffic— I mean foot traffic or vehicle traffic—during the construction work."

[1] We have stated above that the permit to construct the sewer was given to the Houston Belt & Terminal Railway Company, and not the Hedges Construction Company, and, in our opinion, the railway company owed to the public a duty to see that the refilling was tamped in a safe and proper manner, and in compliance with the ordinance, before it accepted same; and appellant could not escape liability for failing to do so, by showing that it employed the Hedges Construction Company to furnish the labor and material for the job.

[2] In our opinion, even if it should be conceded that the Hedges Construction Company was an independent contractor in the performance of this work, and the Houston Belt & Terminal Railway Company was not responsible for any defect in the work of the construction company, the evidence is still ample to justify a finding of negligence on the part of the railway company, because the undisputed evidence shows that it was left to the railway company to decide whether the refilling should be water tamped, and that the railway company did not specify water tamping, although that was the usual and customary method of tamping a job of this kind, and the only safe way to get good results.

[3] It was alleged that the sewer in question became the property of the city of Houston, and constituted a part of its sewer system after it was completed; but, in our opinion, that would not alter the appellant's liability to the plaintiff and his wife and to the public at large for such injuries as might thereafter be sustained by reason of appellant's failure to take proper steps to tamp the refilling above the sewer, and make it safe for pedestrians using the sidewalk.

The sewer that was taken over by the city was located several feet beneath the surface of the street. The condition of the sidewalk was not brought about by any defect in the sewer itself or by its becoming out of repair. It was brought about by the negligent failure of the railway company to properly tamp the refilling and restore the surface of the street after the sewer pipe had been laid, and grew out of the railway company's failure to provide against such subsidence of the surface as would injuriously affect a public sidewalk and endanger the lives and limbs of pedestrians.

From this record there is no evidence that the city attempted to relieve the railway company of any obligations which it owed to the public in connection with the construction of this sewer, even if it should be held that it had power to do so. The record shows that the railway company had secured an ordinance granting it a franchise to construct a sewer from its terminal properties to Buffalo Bayou, and that this ordinance contained an obligation on the part of the railway company to construct the aforesaid sewer; that $15,000 was paid to the city for the privilege of being relieved of this obligation to carry the storm water from the terminal properties direct to the bayou, and for the privileges of being permitted to connect its properties with the new Austin street storm sewer instead, and that the railroad sewer, when constructed, was to become a part of the city sewer system, and be thereafter maintained by the city. There was no testimony that the city undertook to relieve the railway company of liability for such damages as might be sustained by the city of Houston on account of the negligent failure of the railway company to properly refill and tamp the ditch which was excavated for the purpose of laying said sewer, or that the city assumed or in any way became responsible for the negligent manner in which said ditch had been refilled and tamped. A close inspection of the record will justify the conclusion reached by this court, that the first assignment of error must be overruled.

The second assignment of error challenges the action of the lower court in failing and refusing, upon defendant's request, to instruct the jury peremptorily in behalf of the defendant, it appearing that plaintiff is not entitled to recover, because the evidence is wholly insufficient to raise the issue of any breach of duty on the part of the defendant toward the plaintiff or plaintiff's wife, with reference to any of the matters and things set out in plaintiff's petition.

[4] Appellee urged, by counter proposition, that the evidence clearly shows that the appellant breached its duty to the appellee and his wife, and to the public at large, by failing to see that the excavation was properly filled, and that the earth taken therefrom was packed, tamped, and rammed down tight, and by failing to require the Hedges Construction Company to properly tamp the refilling. Appellant's engineer, Mr. Gavin, testified, among other things, that, where a ditch was refilled at a point where there was traffic, it was customary to tamp the refilling so that there would be practically no settlement at all. He testified as to what was actually done as follows:

"We generally rounded up over the top of the sewer anywhere from six inches to two feet higher than the original surface; that provides for any settlement that may take place. We filled it higher than the original surface where there was any traffic over it. If you will allow me to explain that wherever we had construction work, if it was an open ditch we built a bridge across it with timbers and foot railing if it was street traffic—that is, vehicle traffic—we protected it the same way and built railing around to keep the traffic off. On most of our street crossings we put timbers across there to take care of it during construction. I suppose we piled the dirt on an average of a foot above the level where there was any traffic; I mean foot traffic or vehicle traffic, either one."

When asked specifically about the crossing in question, he testified:

"I would not say as to whether we packed and tamped in front of the De George Hotel, because all street crossings were the same, and I would not testify to any certain one during that construction because I looked after all of them, and I would not specify the De George Hotel above any other one."

Therefore, in our opinion, the evidence shows that the Houston Belt & Terminal Railway Company did not comply with its duty to Mrs. Scheppelman and the public at large, in that it did not fill up, pack, and ram down tight the earth taken from the excavation, and leave the sidewalk and street in as good condition and order as the same was before the excavation was made, thereby failing to comply with the express provisions of the ordinance regulating such excavations, the evidence showing clearly that the appellant breached its duty to appellee and his wife by failing to require the construction company to water tamp the refilling of the excavation. A careful examination of the record leaves us of the opinion that this assignment of error must be also overruled.

The third assignment of error complains that the court erred to the prejudice of defendant in failing and refusing, upon defendant's request, to instruct the jury peremptorily in behalf of the defendant, it appearing that plaintiff is not entitled to recover, because the evidence is wholly insufficient to raise the issue that any alleged breach of duty on the part of the defendant was the proximate cause in law of any alleged injuries sustained by plaintiff's wife. We are of opinion that the evidence justified a finding that the condition of the sidewalk was brought about by the appellant's negligent failure to see that the excavation was properly refilled and tamped, and that the condition of the sidewalk directly and proxi-

mately caused the injury to Mrs. Scheppelman. The evidence is ample to sustain a finding that the appellant retained such control and supervision over the work as would render it responsible to the plaintiff and his wife and to the public at large, even though the work was actually done by the Hedges Construction Company. Without further consideration, we are of opinion that this assignment must be overruled.

What has been said also applies to the fourth assignment of error, to the effect that the sewer in question was constructed under an independent contract with the defendant by Hedges Construction Company, and that the defendant retained no control over, and had no such supervision over, said work as to create or give rise to a legal responsibility for the condition thereof, such as is involved in this action.

The fifth assignment of error is as follows:

"The court erred, to the prejudice of the defendant, in failing and refusing, upon defendant's request, to instruct the jury peremptorily in behalf of the defendant, it appearing that plaintiff is not entitled to recover, because, under the undisputed testimony, the relation of the defendant to said sewer and to the street in question, and the condition thereof complained of, was not such at any time as to create a legal responsibility therefor attributable to the defendant in this action."

Without going into the matter in detail, we are of opinion that this assignment must be overruled.

The sixth assignment complains that it appears from the testimony that the city of Houston had taken over the sewer in question long prior to the accident in question, and thereby became solely responsible for the condition of the said street and sidewalk in question, and because, further, it wholly fails to appear that at the time the city took over said sewer, and made same a part of the city sewer system, said sidewalk at the point of the accident in question was defective substantially in the manner alleged in plaintiff's petition.

It is urged by the appellee that the fact that the sewer, when completed, became the property of the city of Houston, and constituted part of its sewer system, did not alter appellant's liability to the plaintiff and his wife, and to the public at large for such injuries as might thereafter be sustained by reason of appellant's failure to take proper steps to tamp the refilling above the sewer and make it safe for pedestrians using the sidewalk; and also that there was no evidence that the city attempted to relieve the railway company from any obligation which it owed to the public in connection with the construction of this sewer, even if it should be held that the city had power to do so; and, further, that one who causes an obstruction or pitfall in a street cannot escape liability because the city has control over the street, and he had no authority to remove same, especially where he makes no attempt to remove the obstruction or pitfall or to secure permission from the city to do so. In this record there is no evidence that the Houston Belt & Terminal Railway Company made any effort to repair the damage it had done to Preston avenue and the sidewalks thereon, or that it sought to obtain from the city council permission to do so. In White v. City of San Antonio, 25 S. W. 1131, it is held that where a city permits a ditch dug by a railway company across a street to remain unguarded, if either be liable for injury received by falling into it, both are liable. The assignment is overruled.

By the seventh assignment of error it is claimed that the court erred, to the prejudice of the defendant, in failing and refusing, upon defendant's request, to instruct the jury peremptorily in behalf of the defendant, it appearing that plaintiff is not entitled to recover, because it wholly fails to appear from any evidence in the record that the condition of the sidewalk which is claimed to have caused the fall of plaintiff's wife did not exist prior to the construction of the sewer in question.

[5] In our opinion the evidence is amply sufficient to justify a finding that the condition of the sidewalk which caused the fall of plaintiff's wife did not exist prior to the construction of the sewer in question. The testimony showed that the sidewalk was perfectly level before the construction of the sewer. It showed that the street or sidewalk leading from the curb to the main sidewalk was level before the sewer was built, and that a part of the sidewalk buckled up and the other part sank, one block sinking one way and one block sinking the other; that after the sewer was constructed the sidewalk began to slope down. Without going into the matter and quoting from the testimony of the witnesses, we overrule this assignment.

[6] The eighth assignment complains that the plaintiff is not entitled to recover in his own name any of the damages alleged and shown to have been sustained, and appellant cites the General Laws of Texas 1915, c. 54, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621a), in which it is provided:

"All property or moneys received as compensation for personal injuries, sustained by the wife shall be her separate property, except such actual and necessary expenses as may have accumulated against the husband for hospital fees, medical bills, and all other expenses incident to the collection of said compensation."

This law was passed after the accident and after suit was filed. Mrs. Scheppelman was injured on November 20, 1912, and suit was filed some time during 1913. The assignment is overruled.

The ninth assignment complains that the court erred, to the prejudice of the defendant, in overruling its amended motion for new trial, and in not granting same, in response to the ground urged as follows: The

affirmative answer of the jury to . special issue No. 4, propounded by the court in the main charge, is unsupported by the evidence, which said issue reads as follows:

"If you have answered that the sidewalk was caused to sink in one place and buckle up in another, and one portion thereof was caused to be raised higher than the adjoining portions, then you will answer this question: Was such condition in the sidewalk the proximate cause of plaintiff's injuries? Answer, Yes or No."

We will not go into the evidence seriatum, but deem it sufficient to say that the jury's finding that the condition of the sidewalk, in so far as it affected the fall of Mrs. Scheppelman, was different from the condition existing prior to the construction of the sewer along Preston' avenue, was amply sustained by the evidence. The assignment is therefore overruled.

What has been said above also applies to the tenth assignment of error.

[7] The eleventh assignment complains that the trial court erred to the prejudice of the defendant in special issue No. 11, which reads as follows:

"What sum of money, if paid now, will, in your judgment, fairly and reasonably compensate plaintiff for the injuries, if any, sustained by his wife, Kate Scheppelman, by reason of her fall, as shown by the pleadings and the evidence in this case? Answer by stating the sum of money."

A careful examination leads us to believe that there is no error in this action of the court, and same is overruled.

[8] The twelfth assignment challenges the action of the trial court, as being error to the prejudice of defendant, in admitting in evidence the photograph offered by the plaintiff and referred to in the testimony of the witness George L. Charlton, the ground of objection being that the proof of the accuracy of the work was not sufficient, and that it would require something more than Mr. Charlton's testimony to admit the photographs in evidence, the photographer himself not being present as a witness. It was decided in the case of Accousi v. G. A. Stowers Furniture Co., 87 S. W. 861, that in an action for injuries the testimony of the injured party that a photograph offered in evidence was a correct picture of the scene of the accident was sufficient to render it admissible. This was done in the instant case. The assignment is overruled.

The following authorities are applicable to this case: Kampmann v. Rothwell, 107 S. W. 120; Southern Express Co. v. Texarkana Water Co., 54 Ark. 131, 15 S. W. 361; Dillon v. Washington Gas Light Co., 1 MacArthur (8 D. C.) 626; White v. City of San Antonio, 25 S. W. 1131; Gray v. Pullen, 5 Best & S. 970; Ames v. Gannon, 77 N. J. Law, 385, 72 Atl. 27; Ry. Co. v. Brown, 11 Tex. Civ. App. 503, 33 S. W. 146; 'Dublin v. Taylor, 92 Tex. 535, 50 S. W. 120; H. & G. N. Ry. Co. v. Meador, 50 Tex. 77; Cameron Mill & Ele-

vator Co. v. Anderson, 98 Tex. 156, 81 S. W. 282, 1 L. R. A. (N. S.) 198; Paris Gas & Light Co. v. McHam, 2 Willson, Civ. Cas. Ct. App. § 651; Drennon v. Patton Worsham Drug Co., 109 S. W. 218; Johnson v. Friel, 50 N. Y. 679; Elzig v. Bales, 135 Iowa, 208, 112 N. W. 540.

A careful review of the entire record leaves us of the opinion that the court guarded the rights of appellant carefully, and that the record shows that no error has been committed that would justify a reversal of the same.

The judgment of the trial court is affirmed.