SCHAFF et al. v. ELLISON et al.   (No. 6990.)*

(Court of Civil Appeals of Texas. San Antonio. Oct. 24, 1923. Rehearing Denied Nov. 21, 1923.)

1. **Master and servant** ⚙⟹101, 102(8)—Ordinary care to provide a safe place required.

It is the duty of the master to use ordinary care to give the servant a safe place in which to perform his duties.

2. **Master and servant** ⚙⟹101, 102(2)—No absolute duty rests on master to furnish safe appliances.

In inspection of appliances to be used by employes, it is the master's duty to use reasonable care and diligence, but no absolute duty rests upon him to furnish safe appliances or keep them in a safe condition.

3. **Master and servant** ⚙⟹128—Appliances safe for intended use sufficient.

It is the master's duty to exercise reasonable care to furnish appliances reasonably safe in the use for which they were intended.

4. **Master and servant** ⚙⟹123—Injury from latent defects not actionable.

An employer is not liable to an employé for injuries from latent defects in appliances.

5. **Master and servant** ⚙⟹123—"Latent defect" defined.

A defect which reasonably careful inspection will not reveal is a "latent defect."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Latent Defect.]

6. **Negligence** ⚙⟹56(1)—Proximate cause of injury defined.

Several causes concurring may form proximate cause, but whether it be the primary cause or the last or intermediate cause it must appear that the injury was the natural consequence of the negligence or wrongful act, and such injury ought to have been foreseen in the light of attending circumstances.

7. **Master and servant** ⚙⟹129(5)—Defective pilot beam not proximate cause of switchman's death.

In action against a railroad and lessee of its cars, for injury causing death of a switchman while standing on the footboard of the railroad's engine of a switching train, which was struck by the lessee's loaded cars with such violence that they jammed a car against the engine and broke the pilot beam and crushed plaintiff's decedent *held*, that shunting the heavily loaded cars was the primary cause of the accident, and that the breaking of the pilot beam by a force which no pilot beam, however constructed, could have withstood, was not the proximate cause of the death.

8. **Appeal and error** ⚙⟹1062(1)—Asking jury whether one defendant's negligence was primary cause of accident held without injury.

Where the act of a lessee of railway cars, in shunting them on a siding, was the first cause put in motion to cause the accident to a railway switchman, in action for personal injuries against the railroad and lessee, there was no injury in asking the jury if the negligence of the lessee was primarily the cause of the accident.

9. **Master and servant** ⚙⟹264(3)—Latent defects of pilot beam properly shown under general denial.

Where, in action for injuries causing death of a railway switchman, plaintiff alleged that the pilot beam of the engine was defective and showed such defect by the fact that the beam gave way under impact and after breakage it was discovered that the beam was decayed, under a general denial defendant could show it had made the required inspections, and that the defects were latent.

10. **Railroads** ⚙⟹259(8)—Company not liable for lessee's negligence.

While a railroad company cannot, by lease or attempted sale, avoid its duties and responsibilities to the public, it is not responsible for the negligence of a lessee to an employé of either the lessor or the lessee, unless its negligence concurred with that of the lessee in bringing about such result.

11. **Courts** ⚙⟹7—Injury to railway switchman on land of United States enforceable in state court.

An action for injuries to a railway switchman, occurring on the land belonging to the United States, is transitory and enforceable in the state courts.

12. **Appeal and error** ⚙⟹1004(1)—Size of verdict is a question of fact, reviewable only for passion or prejudice.

The size of a verdict is a question of fact, and in the absence of any passion or prejudice on the jury's part it will not be disturbed.

Appeal from District Court, Bexar County; Robert B. Minor, Judge.

Action by Anna Bell Ellison, individually, as administratrix, and as next friend of I. W. Ellison, Jr., and another, surviving children of I. W. Ellison, deceased, against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas and another, in which each defendant filed cross-action against the other. Judgment for plaintiff, and defendant named was awarded

---

⚙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused January 16, 1924.

judgment over against defendant the Sumner-Sollitt Company, and both defendants appeal. Reversed in part, affirmed in part.

Charles C. Huff, of Dallas, F. C. Davis and Marshall Eskridge, both of San Antonio, A. H. McKnight, of Dallas, and Birkhead & Lang, F. Stevens, and Carl & Swearingen, all of San Antonio, for appellants.

Arnold & Cozby, of San Antonio, for appellees.

FLY, C. J. This is a suit for damages arising from the death of I. W. Ellison, instituted by his widow, Anna Bell Ellison, for herself individually, as administratrix, and as next friend of the minor children of the survivor and deceased, by name, I. W. Ellison, Jr., and Ray Ellison. It was alleged that the death of I. W. Ellison, Sr., was the result of the joint and several negligence of C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company of Texas and the Sumner-Sollitt Company, a private corporation, and arose directly from the shunting of loaded cars onto a track or spur on which were standing several cars and a locomotive belonging to said receiver, and jamming a loaded coal car with such force as to crush and kill the deceased, who was standing on the brake beam of the engine. The parties' defendant sought to fix the negligence one upon the other, and each filed a cross-action praying for judgment over against the other. The cause was submitted to the jury on special issues and on the answers thereto the court rendered judgment in favor of appellees for $35,000, apportioning it as indicated by the jury, $20,000 to the widow and $7,500 to each of the children, and the receiver was awarded judgment over against the Sumner-Sollitt Company.

The facts show that the Sumner-Sollitt Company was a construction corporation, engaged in building for the United States government on a reservation known as Camp Travis. For the purpose of expediting the delivery of supplies in the camp a spur of the railroad had been extended therein, and there were several switches therein which were numbered; the two involved being numbers 5 and 6. An engine and a number of cars and a locomotive had been leased by the receiver to the construction company, and sufficient men to handle the cars and engine, who had been employés of the receiver, had been turned over to the construction company and had become its employés. The receiver also had cars and an engine under his control on the spur, those operating such rolling stock being employés of the receiver, among the number being I. W. Ellison, deceased, who was acting in the capacity of a switchman for the receiver. The construction company, desiring to shunt four loaded gravel cars onto track 5, requested the receiver's employés to take his engine and cars from track 5 and place them on track 6, and this was done, the engine of the receiver being between five cars in front and a loaded coal car in the rear next to where the construction company was shunting cars. While these cars and engine were standing still on track 6, as the construction company had requested, and while I. W. Ellison, deceased, was standing on the footboard of the engine, the employés of the construction company shunted four heavily loaded gravel cars onto track 6 with such violence that they jammed the coal car against the engine of the receiver, broke the pilot beam, and crushed the life out of I. W. Ellison. These facts are practically undisputed.

The jury, in answer to the issues, found that the Sumner-Sollitt Company operated the four gravel cars which struck the coal car and precipitated it against the engine standing on track 6; that Dale Corbet, who operated the engine controlled by the Sumner-Sollitt Company, was the servant of said company at the time of the accident; that the four gravel cars were handled by an insufficient force of men, which was negligence, and that such negligence was "a proximate cause of the accident"; that it was negligence to throw the four cars into track 6 under the circumstances, and such switching was "a proximate cause of the accident." It was further found that the pilot beam was defective, and such defect was negligence on the part of the receiver, which was "a proximate cause of the accident." The jury was then asked if the negligence of the Sumner-Sollitt Company was "primarily the cause of the accident," and they answered in the affirmative.

The evidence showed that the four cars of gravel weighed about 70 tons each and were running at a speed of 10 to 15 miles, at least, when they struck the car of coal which stood in front of the engine on track 6. The engine had been converted into a switch engine having couplers on each end, but had no cowcatcher or pilot on it on the front end which was struck. It had a footboard in front for employés to stand on. It had a pilot beam 6 or 8 feet long and 12 by 20 inches wide. This is on the front of the engine, and the coupler is attached to it. It receives all the jars and jolts on the front end. It was made of heavy timber, and had two large plates of steel, one inch thick, five inches wide, on it. The impact of the cars not only broke the wooden beam but snapped the steel plates in two. There was some evidence tending to show that the wooden beam was partly decayed, although it was shown that inspections, a short while before the accident, failed to disclose any defect in the beam. The evidence showed that no kind of pilot beam could have withstood the shock caused by the striking cars, weighing in the aggregate 280 tons or 560,000 pounds. All

of the facts, except in regard to the condition of the pilot beam, were undisputed, and the question of law arises as to whether the defective beam was a proximate cause of the death of deceased which concurred with the original proximate cause of the disaster.

[1] It was the duty of the receiver to use ordinary care to give Ellison a safe place in which to perform the duties resting upon him. Ellison was in the place' assigned him in performance of his duty on the footboard in front of the engine. He had the right to be there when he was killed, and no one questions that proposition. The evidence tends to show that the pilot beam was sufficiently strong to accomplish the ends for which it was designed; that it was strengthened with two steel plates, one inch thick and five inches wide; it showed full and careful inspections; and that the blow from the cars was such that no pilot beam could have resisted it. It could not have been anticipated that such force as would be accumulated by a blow from a mass of matter, weighing over half a million pounds, would be catapulted against the pilot beam, and the receiver was not called upon to build appliances to meet such unexpected terrific shocks. The uncontroverted facts tended to show that no pilot beam could have been constructed that could have withstood the battering ram used against the pilot beam in question.

[2] The duty did not devolve upon the receiver to provide absolutely safe appliances to be used by his employés, but it was his duty to use due care to provide safe appliances. In the inspection of appliances it was the duty of the master to use reasonable care and diligence, and no absolute duty rests upon the master to furnish safe appliances or to keep them in safe condition for use. The test is the exercise of reasonable care in furnishing safe appliances and the exercise of due care in keeping them in such condition. Elliott on Railroads, §§ 1273 to 1278, inclusive; Railway v. Whitmore, 58 Tex. 276; Railway v. Templeton, 87 Tex. 42, 26 S. W. 1066, affirming a judgment in the same case by this court.

[3] It is the duty of the master to furnish appliances reasonably safe for the use of the employé, as used in the ordinary prosecution of the master's business. As said by the Supreme Court, in Freeman v. Gerretts, 109 Tex. 78, 196 S. W. 506:

"It would be manifestly unjust to hold any one to the duty of making an appliance safe for a given purpose which, whatever the prudence exercised, could not be made safe for that purpose."

It would be unreasonable to require the master to furnish appliances strong enough to resist any unlawful force that might 'be used against it, but the duty is to exercise reasonable care and diligence in furnishing appliances safe in the use for which they were furnished. The pilot beam was furnished to meet the shocks pertaining to the use for which it was intended, and not to withstand the assaults of a thunderbolt, a battering ram, a catapult, or an armored tractor. McDonnell v. Railway, 192 Mass. 538, 78 N. E. 548.

[4, 5] The evidence clearly showed proper inspections and that the defects in the pilot beam were latent and the general rule is that an employer is not liable to an employé for injury from latent defects in appliances. It is not disputed that ordinary care had been used in the inspections, and a defect which reasonably careful inspection will not reveal is a latent defect. There is nothing in the evidence to indicate that the most rigid inspection would have revealed any defects in the pilot beam. Nothing but absolutely crushing it to pieces did reveal the hidden defects in the pilot beam. To all outward appearance it was in a sound condition. It was not the duty of the receiver to destroy the pilot beam in searching for hidden defects.

[6, 7] Of course, literally applied, proximate cause would be the nearest cause to the accident, but it is not so understood in a legal sense. In law several causes concurring and acting with each may form the proximate cause, but whether it be the primary cause —that is, the one beginning a sequence of events leading up to a catastrophe—or the last or any intermediate cause, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that such injury ought to have been foreseen in the light of the attending circumstances. Railway v. Bigham, 90 Tex. 223, 38 S. W. 162. The receiver could not have foreseen the negligence of the construction company and could not have foreseen or anticipated that the pilot beam would be subjected to the terrible blow inflicted by the four loaded moving cars. It is argued that the pilot beam must have been greatly weakened because the beams of the four moving cars of gravel and the stationery coal car were not broken, but there is no strength in such argument. The engine was standing with the brakes on and received the impact of the five loaded cars, which was so great that it carried the locomotive and five loaded cars a distance of 20 feet, and threw the brakeman in the farthest car to the ground. If he had been killed no doubt could have arisen as to whose negligence caused his death. Such a shock was beyond the ken and calculation of men. Appliances are built to meet the ordinary emergencies, and perform the ordinary functions for which they are used, and not to sustain unexpected illegal onslaughts by negligent persons. All the evidence on the subject tends to show that the crushing of the

pilot beam was not a proximate cause of the death of Ellison, but that it would have occurred if the beam had not broken.

[8] The uncontroverted evidence showed that the act of shutting the cars on siding No. 6 was the first cause put in motion to cause the accident, and therefore the Sumner-Sollitt Company could not have been injured by asking the jury if the negligence of the company was "primarily the cause of the accident." The jury had already found that the company was guilty of negligence, as the whole of the testimony showed, and it could not have injured the company to ask if it was the originator of the negligence leading to the accident. It undoubtedly was the the prime and, as we think, the sole wrongdoer.

[9] We do not think there is any merit in the contention that, in order to prove that there were latent defects in the beam which could not be discovered by the highest degree of care in inspection, such defects must be in terms pleaded, and could not be proved under a general denial. Appellees alleged that the pilot beam was defective, and endeavored to show such defect merely by the facts that the beam gave way under the impact, and after breakage it was discovered that the beam was decayed, and we are of opinion that under a general denial of liability the receiver could show that he had made the required inspections and that the defects were latent and were not discoverable by the exercise of the highest degree of care. Evidence of the inspections was heard without question.

[10] The spur of the railroad was being used, not only by its owner, but by the construction company which leased the use of the same, and the rule is that, while a railroad company cannot, by lease or attempted sale, avoid its duties and responsibilities to the public, it would not be responsible for the negligence of the lessee to an employé of either the lessor or the lessee, unless the lessor's negligence concurred with the negligence of the lessee in bringing about the result. In other words, the liability of the lessor would not arise as to such employé by reason merely of ownership of the road, but upon the active participation of the lessor in the wrong perpetrated. Railroad v. Culberson, 72 Tex. 375, 10 S. W. 706, 3 L. R. A. 567, 13 Am. St. Rep. 805.

[11] The pleas to the jurisdiction of the court were properly overruled. The action was a transitory one, and, although the injury occurred on land belonging to the United States, it could be enforced in the courts of Texas, and this would be true, although the cause of action arose in a foreign country. The rule, as laid down by this court in Mexican Central Railway v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 282, is that the cause must be actionable where the suit is brought and must not have been justifiable by the law of the place where it was done. In the case cited, Mitten had been injured in Mexico, and this court held that Texas courts had jurisdiction of the cause, and a writ of error was denied by the Supreme Court. See, also, Railway v. Sowers (Tex. Civ. App.) 99 S. W. 190, and Railway v. Dusablon, 48 Tex. Civ. App. 203, 106 S. W. 766.

[12] No attempt is made by the Sumner-Sollitt Company to show that the verdict is excessive, but there is merely the dogmatic statement that it is excessive. The size of a verdict is a question of fact, and, in the absence of any passion or prejudice on the part of the jury, this court will not disturb it.

We find no merit in any of the points presented by the Sumner-Sollitt Company.

The judgment will be reversed, in so far as as it appertains to the receiver, and it is the judgment of this court that appellees recover nothing as against O. E. Schaff, receiver, and that the latter recover nothing against the Sumner-Sollitt Company, and that the judgment as between the Sumner-Sollitt Company and appellees be in all things affirmed.