### E. L. MARTIN, Inc., v. KYSER.
#### No. 3482.

Court of Civil Appeals of Texas. El Paso.
March 18, 1937.

Rehearing Denied April 29, 1937.

Sewell, Taylor, Morris & Garwood, of Houston (Ben G. Sewell and Larry W. Morris, both of Houston, of counsel), for appellant.

Kayser, Liddell, Benbow & Butler, of Houston (John Dawson, of Houston, of counsel), for appellee.

NEALON, Chief Justice.

A. C. Kyser, appellee, recovered judgment for $35,000 against E. L. Martin, Inc., a corporation, on account of personal injuries sustained by him in August, 1934, on a construction job in Harris county. Plaintiff was not an employee of the defendant, but was a graduate engineer then working as a concrete inspector for the State Highway Department. At the time of his injury he was inspecting the pouring of a large quantity of concrete under a railroad trestle or bridge being constructed by the defendant to form an underpass so that the highway might pass under the tracks of the Houston Belt & Terminal Railroad. At the point where the accident occurred the railroad runs generally north and south and the highway east and west. The underpass had been excavated, and a temporary railroad bridge constructed over it of sufficient strength and width to carry three standard railroad tracks with trains passing over them, and a temporary walkway had been constructed on the same level with the railroad bridge, paralleling it on the east side. A permanent foundation was being poured under the trestle to support it when completed, and the concrete was brought from a concrete mixer to a point over the trestle by the use of a large crane or dragline machine to which was attached a bucket used to carry the concrete. The crane and the concrete mixer were both east of the railroad and south of the highway, and on about the same level with the railroad. The pit to be filled with concrete was below the trestle, approximately twenty-five feet lower than the mixer and crane. Plaintiff at the time of his injury was standing a few feet east of the railroad trestle and south of the highway, and on about the same level with the highway. He was standing on a concrete footing which had been poured some time before and was observing the pouring of concrete under the bridge. In carrying the concrete from the mixer to the railroad trestle the loaded bucket passed about 30 feet above plaintiff's level in a circular fashion from the mixer to the trestle and over or nearly over the point where the plaintiff was standing. Plaintiff was injured when the cable attached to this bucket broke and permitted the bucket to drop on the temporary walkway which had been constructed east of the bridge in such way as to cause the bucket to fall in such close proximity to the plaintiff as to injure him and throw a large quantity of concrete upon him. There is a dispute as to how long plaintiff had been standing in this position prior to his injury. Apparently he was so standing from between 30 to 60 minutes prior to being injured. The pouring of concrete into this pit would require about 20 hours of continuous work. Occasionally it was necessary to move the dragline machine, which was handling the concrete, backwards and forwards for a short distance to empty the bucket into the different chutes which had been constructed through the railroad

trestle. The bucket when filled with concrete weighed approximately 2,400 pounds, and it is undisputed that it would be impossible for it to pass through the railroad ties in such a manner as to fall under the bridge.

The plaintiff alleged in substance that he was injured because of the negligence of the defendant in using a defective cable, and in failing to properly inspect the cable, and in moving the dragline machine shortly before his injury with a bucket of concrete attached to it; and plaintiff further alleged that defendant was negligent in the manner in which it had rigged the bucket in that it permitted unnecessary twisting and consequent wear on the cable.

The defendant answered by general denial and by special pleas of contributory negligence, alleging that the plaintiff's injuries were proximately caused by his negligence in voluntarily selecting a place to stand under the path of the movement of the bucket, which was a place of danger, when he could just as easily have selected a place of safety out of the path of the movement of the bucket, and in failing to stand under the railroad trestle where the work which he was to inspect was being performed, and where he would have been in perfect safety even though the bucket did fall.

The case was submitted to the jury on nine special issues, in answer to which the jury found in substance as follows: (1) That plaintiff's injury was not the result of an unavoidable accident; (2) that the defendant knew, or could in the exercise of ordinary care have known, that the cable was of insufficient strength for the use to which it was being put; (3) that the moving of the dragline machine immediately before the accident was negligence; (4) that such negligence was the proximate cause of plaintiff's injury; (5) that the defendant failed to exercise ordinary care with respect to inspection of the cable; (6) that such failure was the proximate cause of plaintiff's injury; (7) that an ordinarily prudent person situated as was the defendant would have used a tag line or other similar attached line; (8) that defendant's failure to use such a line was the proximate cause of plaintiff's injury; (9) that $35,000 would fairly and reasonably compensate plaintiff for his injuries.

Upon the verdict the court rendered judgment in favor of the plaintiff for $35,000 and costs of suit.

Defendant filed its motion for a new trial which was overruled. From the judgment and the order overruling the motion for new trial defendant prosecutes this appeal.

### Opinion.

1. By appropriate assignment and proposition appellant complains of the action of the court in giving, immediately after the special issue respecting unavoidable accident, the following instruction: "If you have answered the foregoing special issue 'it was the result of an unavoidable accident, then you need not answer any of the following special issues.'" Among the other special issues submitted were those relating to negligence upon the part of defendant under various theories of fact and a special interrogatory designed to elicit a finding as to the amount of cash that would fairly and reasonably compensate plaintiff for his injuries. That this instruction following the issue of unavoidable accident is reversible error was held in Schroeder v. Rainboldt, 97 S.W. (2d) 679, in an opinion by the Commission of Appeals which was adopted by the Supreme Court. Consequently, if the facts raised the issue of unavoidable accident, the judgment in this case must be reversed.

2. The issue of unavoidable accident is present when it cannot be said as a matter of law that the injury resulted from either the negligence of plaintiff or of defendant or a combination of both. Dallas Railway & Terminal Co. v. Garrison (Tex.Com.App.) 45 S.W.(2d) 183. In this case there would have been no injury had not the cable broken. Can it be said, from the evidence, as a matter of law that there was not a latent defect in the cable of which defendant had no notice—"a defect which reasonably careful inspection will not reveal"? Schaff v. Ellison et al. (Tex.Civ.App.) 255 S.W. 680, 682. In determining this question, we, of course, consider only the evidence most favorable to defendant in respect to this issue. Largely it is, of necessity, opinion testimony. The crane operator had put the cable on about a week prior to the accident. He testified that he looked at the cable before putting it on the machine; most of it went through his hands; to him it looked like a good cable; he saw no broken strands; if the cable was mashed he didn't see it; he had had eight years' experience operating cranes; he had never seen a cable break below the sheave before; he had no warn-

ing that it was going to break. J. H. Lain, also a crane operator, said the cable "looked like it was all right to pick up the load"; he didn't see any breaks in the strands; the cable "looked all right." H. P. Edney, an employee of the Houston Belt & Terminal Railroad, who was on the ground in the interest of the railroad, thought the cable looked all right. We think that, as our courts apply the law, the issue of unavoidable accident was in the case.

■■ 3. Special issue No. 2 submitted to the jury was as follows:

"Do you find from a preponderance of the evidence that the defendant, its agents, servants and employees engaged in the work knew, or in the exercise of ordinary care could have known, before the occurrence under inquiry, that the cable was of insufficient strength for the use to which it was being put at the time of plaintiff's injury?

"You will answer 'yes' or 'no' according as you may find the facts to be."

Appellant objected to the submission of this issue upon the ground that it was duplicitous in inquiring both as to whether appellant knew or could have known that the cable was of insufficient strength. In support of its proposition that the issue as submitted was erroneous, appellant cites the decision of the Beaumont Court of Civil Appeals in Gulf States Utilities Co. v. Wooldridge, 90 S.W.(2d) 325, in which it was held that an almost identical issue was objectionable as being multifarious. This holding is based upon the theory that it calls for holdings upon two ultimate, independent, determinative facts. In this the Beaumont Court takes issue with the Galveston Court's views as expressed in Thurman v. Chandler (Tex.Civ.App.) 52 S.W.(2d) 315, in which case the assignment of duplicity was overruled, and cites as supporting authority Theis v. Curts (Tex.Civ.App.) 33 S.W.(2d) 754, 759, in which it was held to be error to submit an issue calling for a single yes or no answer to an inquiry as to whether an alleged agent acted within the scope of his "real or apparent * * * authority." It seems to us that there is a vast difference between the bases of the two holdings. Apparent authority may exist where real authority is lacking. The first is a mere appearance, the display of which is permitted by the principal, the second an actuality; but knowledge which would fol-low inquiry diligently pursued from known facts is implied actual notice. Hexter v. Pratt (Tex.Com.App.) 10 S.W.(2d) 692. The only fact to be determined is: Did defendant have notice? It is true that the force of the holding in Thurman v. Chandler was somewhat weakened by the court's further holding that the evidence did not call for the submission of the issue; yet where a question fairly arises and is distinctly decided, the views expressed cannot be called mere dictum; and the view of the Galveston Court was that, if the question was in the case, the form of the issue was unobjectionable. The Supreme Court reversed (125 Tex. 34, 81 S. W.(2d) 489) the judgment upon other grounds, and the question as to the correctness of the charge in this particular was not discussed. In numerous instances similarly worded issues seeking the same findings have passed unchallenged. See Speer's Law of Special Issues, p. 332 et seq. We think that but one ultimate fact was to be determined, and that the issue as submitted was not subject to the objection made.

■ 4. Appellant made various objections to the submission of special issue No. 3. This issue reads as follows: "Do you find from a preponderance of the evidence that the act of the defendant, its agents, servants and employees, in moving the drag line machine at and immediately before the accident, was, in the light of the attending conditions in evidence, as you may believe them to be, negligence, as that term has been defined?"

The form of this issue was objectionable. The pleading alleged that appellant "negligently caused the dragline to be moved while carrying the bucket loaded and suspended from the tram," adding allegations as to alleged consequences. The question does not follow the pleading sufficiently closely; and, upon another trial, if the facts call for its submission, it should be revised to obviate this fault. From the manner of submission it would be impossible to say under which of the alleged specifications of negligence the jury found the movement to be negligent.

■ 5. We think special issue No. 5 was subject to criticism. Either it should have been aimed more directly at the character of inspection made, assuming, as appellee admits in his brief was the case, that an inspection was made, or there should first have been an inquiry as to whether an

inspection had been made, with a subsequent inquiry as to its character. These requirements are not met by a mere inquiry as to whether the defendant "failed to exercise ordinary care with respect to inspection of the cable prior to the time of the occurrence under inquiry."

6. Appellant complains of the court's failure to submit an issue as to contributory negligence upon the part of plaintiff. Appellant pleaded that plaintiff was guilty of contributory negligence in selecting a place immediately under the path of the bucket from which to watch operations when there were other places available to him which he might have used in safety. There was evidence that appellee could have prepared a post of observation under the trestle, and would there have been out of the path of the bucket. Though it appears that appellee was not exactly under the path of the bucket at the time he was injured, but that the bucket struck another object and bounded to or near to the place at which he was standing, we cannot say as a matter of law that he might not have foreseen the likelihood of an occurrence like the one being considered; he was a graduate engineer, presumably cognizant in a great measure of the possibility of breaks in equipment and with special knowledge of the effect of use and strain upon material of the kind used in the manufacture of the cable.

Upon another trial, if the evidence be substantially the same, the issue of contributory negligence should be submitted.

7. The other questions raised will probably not be present upon another trial.

For the reasons stated, judgment is reversed and the cause remanded.

### On Rehearing.

Appellee has filed an excellently briefed and forcefully argued motion for rehearing. He insists we erred in holding that the issues of unavoidable accident and contributory negligence were raised by the evidence. We have re-examined the grounds upon which our decision was based.

A comparison of the fact situation in the instant case and that present in Thurman v. Chandler, 125 Tex. 34, 81 S.W.(2d) 489, confirms us in our conviction that a submission of the issue of unavoidable accident was the right of appellant.

With respect to the issue of contributory negligence, we have concluded that we were in error. The chief danger that Kyser might be expected to foresee would be that arising from material dropping from the bucket passing over his head. It does not appear that he would have been entirely free from that danger, were he under the trestle, and it further appears that to remain under the trestle, it would have been necessary for him to walk on reinforcing rods. This workmen were forbidden to do, because it would tend to displace the rods.

That the record may be in condition to give jurisdiction for further appeal, appellee asks that we rule upon appellant's assignments numbered 100, 106, 111, 113, and 114.

Assignment No. 113 complains of the amount of damages assessed by the jury, challenging it as being excessive. We shall not now rule upon this question.

Assignment No. 100 complains of the submission of an issue as to whether appellant was negligent in not using a "tag line, or other similar attached line." There was no such negligence pleaded. However, the error is immaterial, as there were other independent grounds of recovery determined in appellee's favor.

Assignments 106 and 111 complain of the instructions as to the measure of damages. These assignments are overruled. Texas Utilities Co. v. Dear (Tex.Civ.App.) 64 S. W.(2d) 807; Houston Belt & Terminal Ry. Co. v. Scheppelman (Tex.Civ.App.) 203 S.W. 167.

Assignment 114 is overruled. There was no evidence that the jury discussed the effect of its answers prior to agreement as to the entire verdict. The mere fact that the jurors understood that the plaintiff sought to have them find his injuries were not the result of unavoidable accident does not indicate misconduct upon their part. It indicates merely that they were able to understand from the argument of counsel exactly what finding counsel for each litigant sought. It would be a poor tribute to the capacity of counsel or the intelligence of the jurors to believe that they would long remain ignorant of the attitude of the litigants after listening to argument.

The motion for rehearing is overruled.